**UNITED STATES of America, Appellee,**

v.

**Jerry (NMN) SCHOCKET, Appellant.**

**No. 83–5244.**

United States Court of Appeals, Fourth Circuit.

Argued Oct. 5, 1984.

Decided Jan. 23, 1985.

Goldblatt, Lipkin, Cohen, Anderson, Jenkins & Legum, P.C., Norfolk, Va. on brief), for appellant.

Raymond A. Jackson, Asst. U.S. Atty., Norfolk, Va. (Elsie L. Munsell, U.S. Atty., Alexandria, Va., on brief), for appellee.

Before WIDENER and CHAPMAN, Circuit Judges, and HARGROVE, United States District Judge for the District of Maryland, sitting by designation.

HARGROVE, District Judge.

This is an appeal from the United States District Court for the Eastern District of Virginia, Norfolk Division. The appellant, Jerry Schocket, was tried in absentia and was found guilty of conspiracy to distribute marijuana, interstate travel to promote illegal activity in violation of the Travel Act 18 U.S.C. § 1952 (1961), and possession of cocaine. He received a twenty-one-year sentence. On appeal, the appellant raises questions concerning the sufficiency of the evidence for the cocaine possession count and the violation of the Travel Act count and states that he was improperly tried by the district court in his absence. He also alleges that he was improperly sentenced to incarceration for fifteen years for his conviction of conspiracy to distribute marijuana. We find that the appellant was properly tried, although he was voluntarily absent from his trial, that the evidence was sufficient to convict him of all three crimes, and that his sentence was proper. Thus, we affirm the decision of the trial court.

I

On July 27, 1982, a federal grand jury returned a four-count indictment against the appellant and three co-defendants. Count I charged the defendant with conspiracy to possess marijuana with intent to distribute in violation of 21 U.S.C. § 846 (1970); Count II charged him with interstate travel to promote an unlawful activity, distribution of marijuana, in violation of 18 U.S.C. § 1952 (1961); and Count IV charged him with possession of cocaine, in violation of 21 U.S.C. § 844(a) (1970).

Linda L. Carroll, P.A., Miami, Fla. (Robert H. Anderson, Jr., Charles E. Jenkins, II,

The appellant attended his arraignment on August 4, 1982, and entered a plea of not guilty requesting a trial by jury. He was told at the time of the arraignment that the date for the trial was October 4, 1982. However, when the case was called for trial on that date, he failed to appear. The trial court issued a bench warrant for Schocket's arrest and revoked his bond. One of his co-defendants, Mr. Bishop, also did not appear for the joint trial and his lawyer advised the court that Bishop had allegedly been kidnapped. The court granted a continuance until October 13, 1982 for all four defendants so that counsel, as well as the court, could ascertain the reason, if any, for the failure of Bishop and the appellant to appear. When the case was called on October 13, 1982, neither Schocket nor Bishop appeared and their attorneys could offer no reasons for their failure to appear. The court then proceeded with the trial without defendants Bishop and Schocket. Two other co-defendants did appear and were tried. The jury convicted Schocket of Counts I, II and IV. On June 2, 1983, the appellant was arrested in Fort Lauderdale, Florida, and was returned to the Eastern District of Virginia for sentencing. He received fifteen years for Count I; five years for Count II and one year for Count IV, terms to run consecutively, making a total sentence of twenty-one years. From that sentence the appellant appeals.

## II

To understand the factual basis of this appeal, it is necessary to consider the actions not only of appellant Schocket, but those of his co-defendants as well. In June of 1982, a confidential informer, John Rakar, met co-defendant Bishop in Seattle, Washington. The two men discussed Rakar's ability to fly different types of aircraft which were to be used to transport marijuana for Bishop. Rakar told the Drug Enforcement Administration (DEA) about the discussions. At the DEA's suggestion, Rakar agreed to fly a DC–3 for Bishop which was allegedly already loaded with marijuana in Virginia.

On July 16, 1982, Bishop telephoned Rakar from Fort Lauderdale, Florida, and arranged for Rakar to travel to Norfolk, Virginia. Bishop told Rakar that there was a load of marijuana in the Norfolk area which was to be flown to an undisclosed location. While under the surveillance of DEA agents, Rakar met Bishop at the Norfolk International Airport and took him to Horne's Coliseum Inn in Hampton, Virginia on July 17, 1982. DEA Special Agent James telephoned Bishop the following day and discussed a possible purchase of marijuana by Bishop from James. James and another DEA agent, Joel Gutensohn, and Bishop met on July 19, 1982, to discuss the sale of approximately 2,700 pounds of marijuana for $370,000. Bishop told Agent James that he had a partner in his drug distribution business. Later that day Bishop instructed Rakar to pick up the appellant, Jerry Schocket, at the Sheraton Inn in Norfolk. This Rakar did. At approximately 1:00 p.m. on July 19, 1982, Special Agents James and Gutensohn and Schocket met to discuss the sale of 4,600 pounds of marijuana. Shocket stated that he would like to purchase the marijuana and send it to Pittsburgh, Pennsylvania. Schocket returned to the Coliseum Inn and went to Bishop's room to make the necessary phone calls to Pittsburgh. After these conversations, the appellant told Special Agent James that the money for the marijuana would not be available until July 20, 1982, the following day.

On July 20, 1982, at approximately 9:45 a.m., Special Agent Gutensohn telephoned Bishop who told him that the money would be ready by 2:00 p.m. The DEA in Norfolk, Virginia requested the DEA in Pittsburgh, Pennsylvania to identify any individual or individuals who might be bringing the money from Pittsburgh to Norfolk. In accordance with these plans, Special Agent Larry J. Carroll and his partner went to Pittsburgh Airport where they observed co-defendants Lisotto and Pella departing on U.S. Air Flight 102 leaving at 1:05 p.m. These two men were seen arriving in Norfolk at 2:00 p.m. by Special Agent Ladsdon.

Pella and Lisotto went to the phones in the Norfolk airport; Pella made a call and then the two men took a cab to the Sheraton Inn in Norfolk, Virginia. Ladsdon followed them to the Sheraton Inn.

At approximately 3:40 p.m., co-defendant Bishop telephoned Rakar and asked him if the aircraft was ready to fly one thousand pounds of marijuana to Pennsylvania. Rakar informed Bishop that the plane could be ready at a moment's notice. Bishop then told Rakar to get a good weather report because there was some thunderstorm activity and one of the men from Pittsburgh was a pilot who would be flying with Rakar.

During the afternoon of July 20, 1982, Special Agents James and Gutensohn met co-defendant Bishop in the Sheraton Inn lounge. Pella and Lisotto were seated at another table in the lounge. Bishop told the agents that the money had arrived from Pittsburgh and that one of the people who had brought the cash was a pilot. The men made their plan as follows: the initial quantity of the marijuana would be flown to Pittsburgh, Pennsylvania; James and Gutensohn would receive payment for that amount of marijuana; and, then another quantity would be transported in the same manner. Bishop agreed to purchase 4,600 pounds of marijuana and the use of the aircraft for $609,000. Bishop told James that the money was upstairs and would be delivered by the appellant Schocket. After Bishop left, Schocket arrived in the lounge area carrying a paper bag. Schocket and James met in the restroom where Schocket was arrested by James and Gutensohn. The paper bag was seized. It contained $59,000 in cash.

Meanwhile, the other DEA agents went upstairs to the appellant's room. James knocked on Schocket's door and explained that there was a problem with the money. Bishop stated that he would be there in a minute. When Bishop cracked the door, the agents kicked the door in and arrested Bishop, Pella and Lisotto. On the table in Schocket's room was a substance which was later identified as cocaine.

The defendants were taken to the Virginia Beach, Virginia jail.

## III

■ The District Court did not err in trying the appellant in his absence. There is no evidence in the record which suggests that the appellant was involuntarily absent. Rather, it is clear that the appellant knew the date of his trial and simply failed to appear both for the initial trial date of October 4, 1982 and for the trial which started on October 13, 1982. The trial court did allow a continuance on October 4, 1982, and the appellant's attorney was given an opportunity to try to contact him. Appellant's attorney could not explain the appellant's absence since he had not heard from Schocket as to his reason for not appearing for trial. When the appellant was apprehended in Florida and returned to Virginia for sentencing, he did not indicate that his absence was involuntary. On the contrary, he said he thought that the trial had been postponed. The record indicated, however, that Schocket also had failed to communicate with his lawyer and absented himself from his home and family as well as from the court.

Rule 43 of the Federal Rules of Criminal Procedure provides that the defendant shall be present at every stage of his trial and if he voluntarily absents himself from the trial after it is commenced, he shall be considered to have waived his right to be present at trial. In this case, the government correctly argues that the appellant waived his constitutional right to be present at his trial. *See United States v. Peterson*, 524 F.2d 167 (4th Cir.1975), *cert. denied*, 423 U.S. 1088, 96 S.Ct. 881, 47 L.Ed.2d 99, 424 U.S. 925, 96 S.Ct. 1136, 47 L.Ed.2d 334 (1976).

The appellant argues that the United States would not have been prejudiced if the appellant's trial had been postponed until he decided to appear for his trial. The facts convince us otherwise. This case was a conspiracy case with four defendants; two who resided in Pennsylvania and two who traveled from Florida to Virginia.

The defense lawyers in the case consisted of four in-state and four out-of-state counsel and there were witnesses from at least four states. Additionally, the government had an informer whose identity had been revealed prior to the trial date and his safety was a matter of concern to the government. These were, indeed, compelling reasons for trying the four defendants together on October 13, 1982.

In *Taylor v. United States*, 414 U.S. 17, 94 S.Ct. 194, 38 L.Ed.2d 174 (1973), the Supreme Court said that a defendant released on bail, as the appellant was, has a concomitant obligation to be present at his trial so as not to frustrate the progress of his prosecution. The court has stated that,

> to permit a defendant, free on bail, to obstruct the course of justice by absconding without a compelling reason, after having received actual notice of the time and place of trial, is as inconsistent with the purposes of the rule as to permit a defendant to abscond after the trial has commenced. We, therefore, hold that a defendant may waive his right to be present at later stages of the proceedings.

*U.S. v. Peterson, supra*, at 184.

It is clear that the appellant voluntarily waived his right to be present at his trial by his actions.

The appellant also contends that the evidence was insufficient to convict him. He is incorrect since the evidence was sufficient on each of the counts to convict him of the crime of which he was charged.

■ To establish the appellant's guilt for the cocaine possession count, it was necessary for the government in this case to prove that (1) Schocket possessed cocaine, a Schedule II Controlled Substance, and (2) that he did so knowingly and intentionally.

■ Possession of narcotics may be established by direct or circumstantial evidence. Possession may be actual or constructive and may be joint. *United States v. Bridges*, 419 F.2d 963 (8th Cir.1969). *See also United States v. Wilson*, 657 F.2d 755 (5th Cir.1981), *cert. denied*, 455 U.S.

951, 102 S.Ct. 1456, 71 L.Ed.2d 667 (1982). A person has constructive possession of a narcotic if he knows of its presence and has the power to exercise dominion and control over it. *Williams v. United States*, 418 F.2d 159 (9th Cir.1969), *aff'd* 401 U.S. 646, 91 S.Ct. 1148, 28 L.Ed.2d 388 (1971).

■ The evidence at trial showed that the appellant told Rakar that he wanted cocaine; so the two men went to a nightclub in search of cocaine. Before the cocaine was found in the appellant's room, co-defendant Bishop stated that he was going to the appellant's room "to set up everything for freebasing" and said that Schocket would be downstairs with the money. Shortly after Schocket left his room, the agents went in and found the cocaine on a table in the middle of the room along with Bishop, Pella and Lisotto, the three co-defendants. Since Schocket had asked for cocaine, the jury could infer that he had knowledge of the cocaine supply. Also, from a consideration of the number of items that were present in the appellant's room and which were related and/or necessary to the use of cocaine, the jury could conclude reasonably that the appellant knew that cocaine was going to be used in his room. Although the appellant was absent from his room when the cocaine was found, he retained constructive possession over the cocaine since he had the ability to use it, remove it, and therefore to exercise dominion and control over the substance. There was, therefore, sufficient evidence to convict the appellant of possession of cocaine.

■ To convict the appellant of interstate travel in the promotion of the unlawful activity of possession of marijuana with intent to distribute, in violation of 18 U.S.C. § 1952 (1961), the government was required to prove beyond a reasonable doubt the following three essential elements:

(1) That the appellant, at approximately the time charged in the indictment, traveled in interstate commerce or used facilities in interstate commerce;

(2) That the travel was done with the specific intent to further the unlawful activity of possession of marijuana with intent to distribute, and

(3) That the appellant, after such travel and use, performed or attempted to perform acts to possess marijuana with intent to distribute as charged in the indictment. *United States v. Wander,* 601 F.2d 1251 (3rd Cir.1979). *See also U.S. v. Corbin,* 662 F.2d 1066 (4th Cir.1981).

■ The evidence in this case established each of the elements beyond a reasonable doubt. On July 18, 1982, at 12:37 p.m., the appellant registered at the Sheraton Inn in Norfolk, Virginia. He told Rakar that he had come to Norfolk from Fort Lauderdale, Florida. After arriving in Norfolk, Schocket made interstate telephone calls, many of which were made to Florida.

Bishop told the government agents that the appellant was his partner. Schocket also told undercover agents that he had had a long relationship with Bishop as far as drugs were concerned. Schocket inspected the marijuana with the agents and negotiated for the delivery of 4,600 pounds of marijuana in several installments. Once appellant arrived in Norfolk, he did acts that were necessary for the illegal activity, including the delivery of $59,000 in cash to the undercover agents for the purchase of the marijuana. The evidence shows that the money came from Pennsylvania. This was caused by the acts of Schocket.

■ The appellant argues that no evidence was presented which established how or when he traveled to Virginia. It is clear that he did arrive in Virginia and obviously he traveled to get there. The jury could and did conclude that the appellant had traveled to get to Virginia. Although the government could not prove the exact time of the appellant's travel, it is clear that the government need only prove that the illegal activity happened during a period of time reasonably related to the date alleged in the indictment. *United States v. Grubb,* 527 F.2d 1107 (4th Cir.1975). *See also*

*United States v. Henderson,* 434 F.2d 84, 86 (6th Cir.1970).

■ Turning our attention now to the third count, that of conspiracy to distribute marijuana, we also conclude that sufficient evidence was presented to convict the appellant of that crime.

Finally, the appellant raises the question of the propriety of the court's imposition of a fifteen year sentence for the appellant's part in the conspiracy to possess with intent to distribute marijuana. The appellant argues that Congress did not intend to increase from 5 years to 15 years the period of incarceration for trafficking in marijuana for persons who were convicted under the conspiracy statute. This argument is not persuasive. A review of the statute makes it obvious that Congress intended to increase the penalty for large scale drug trafficking by its enactment of 21 U.S.C. § 841(b)(6) (1970) which provides that

"In case of a violation of subsection (a) of this section involving a quantity of marihuana exceeding 1,000 pounds, such person shall be sentenced to a term of imprisonment of not more than 15 years, and in addition may be fined not more than $125,000."

■ It is well settled that a federal district court judge is vested with broad discretion in the sentencing phase of criminal prosecutions, and that sentences imposed within the statutory limits are generally not reviewed on appeal. *United States v. Pruitt,* 341 F.2d 700 (4th Cir. 1965). This Court has held that if a sentence is within the statutory limits, "the sentence would not be disturbed unless a trial judge has grossly abused the discretion afforded him." *United States v. Hodge,* 394 F.2d 122 (4th Cir.1968). This Court has consistently endorsed the view that a sentence fixed within the limits approved by Congress will not be reviewed on appeal in the absence of extraordinary circumstances. *United States v. Wilson,* 450 F.2d 495 (4th Cir.1971). Here, the court did not abuse its discretion in sentencing the defendant to a term of 15 years for conspiracy to possess with intent to distribute

4,600 pounds of marijuana. This sentence was within the limits set by Congress.

After a consideration of all of the appellant's arguments, the decision of the trial court is affirmed.

AFFIRMED.