UNITED STATES of America, Appellee,

v.

**Foluso AKINSEYE, Appellant.**

UNITED STATES of America, Appellee,

v.

**Felix Oyewale AYODEJI, Appellant.**

Nos. 85–5193(L), 85–5194.

United States Court of Appeals, Fourth Circuit.

Argued July 18, 1986.

Decided Oct. 2, 1986.

Rehearing and Rehearing En Banc Denied Nov. 18, 1986 in No. 85–5194.

Michael J. Morrissey, Washington, D.C., for appellant Akinseye.

Robert J. Flynn, Jr., Washington, D.C., for appellant Ayodeji.

Carmina S. Hughes, Asst. U.S. Atty. (Breckinridge L. Willcox, U.S. Atty., Baltimore, Md., on brief), for appellee.

Before HALL and SPROUSE, Circuit Judges, and WILLIAMS, United States District Judge for the Eastern District of Virginia, sitting by designation.

RICHARD L. WILLIAMS, District Judge:

On May 20, 1985, appellants Fuloso Akinseye and Felix Ayodeji were convicted by a jury of (1) conspiracy to possess heroin with intent to distribute and conspiracy to distribute heroin; (2) possession of heroin with intent to distribute; and (3) conspiracy to possess with intent to distribute at least 100 grams of heroin. 21 U.S.C. §§ 841(a)(1), 846. On July 10, 1985, they were each sentenced to a total of thirty years, with the direction under 18 U.S.C. § 4205(b)(1) that they be eligible for parole in ten years. On appeal, they challenge their convictions, as well as the sentences imposed.

Both Ayodeji and Akinseye contend that they were entrapped. Ayodeji also claims that his sixth amendment right to counsel was violated by joint representation and that he was denied effective assistance of counsel at sentencing. Akinseye challenges the constitutionality of certain tape recordings and claims that the trial itself was defective in various respects. He also challenges the length of the sentence imposed. Finding no merit in any of these arguments, we affirm the convictions and sentences.

## I. Entrapment

The defendants' convictions stem from a series of heroin sales to Detective Dwight Rawls. Rawls is a Washington D.C. Metropolitan Police detective assigned to the Drug Enforcement Administration ("DEA") Mid-Atlantic Heroin Task Force. While Akinseye and Ayodeji admit that they sold the drugs to Detective Rawls, they claim that Rawls entrapped them and that, therefore, no criminal liability should attach. The defendants raised the defense of entrapment at trial and the district court instructed the jury on entrapment,[1] but the jury nonetheless found the defendants guilty on all counts.

On appeal, the defendants argue that they were entrapped as a matter of law. They rely on what they call the "objective" view of entrapment, a view they claim is now developing in the circuit courts. This objective view requires dismissal of any charge involving "impermissible government action." Brief of Appellant Akinseye at 5. Predisposition of the defendants never becomes an issue, the focus, instead, being on the government.

---

1. Appellant Akinseye objects to the jury instructions given on entrapment as well. He challenges in particular the court's use of the word "solicit." This claim is without merit. The instructions as a whole accurately state the law on entrapment. *United States v. DeVore,* 423 F.2d 1069, 1071 (4th Cir.1970), *cert. denied,* 402 U.S. 950, 91 S.Ct. 1604, 29 L.Ed.2d 119 (1971).

In making this argument, the defendants do not appear to claim that the government's conduct was so outrageous that it violated their right to due process, a claim distinct from the entrapment defense.[2] They explicitly argue that the objective view is the proper standard for the statutory defense of entrapment.

The Supreme Court has rejected this standard repeatedly. *United States v. Russell,* 411 U.S. 423, 435, 93 S.Ct. 1637, 1644, 36 L.Ed.2d 366 (1973); *Sherman v. United States,* 356 U.S. 369, 372–73, 78 S.Ct. 819, 820–21, 2 L.Ed.2d 848 (1958). As it stated in its most recent opinion on the matter:

> In *Russell* we held that the statutory defense of entrapment was not available where it was conceded that a Government agent supplied a necessary ingredient in the manufacture of an illicit drug. We reaffirmed the principle of *Sorrells v. United States,* 287 U.S. 435 [53 S.Ct. 210, 77 L.Ed. 413] (1932) and *Sherman v. United States,* 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958), that the entrapment defense "focus[es] on the intent or predisposition of the defendant to commit the crime," *Russell, supra* [411 U.S.] at 429 [93 S.Ct. at 1641], rather than upon the conduct of the Government's agents. We ruled out the possibility that the defense of entrapment could ever be based upon governmental misconduct in a case,

such as this one, where the predisposition of the defendant to commit the crime is established.

*Hampton v. United States,* 425 U.S. 484, 488–89, 96 S.Ct. 1646, 1649–50, 48 L.Ed.2d 113 (1976) (plurality opinion). Since *Russell,* "the essential element of the entrapment defense is the defendant's lack of predisposition to commit the crime charged." *United States v. Hunt,* 749 F.2d 1078, 1085 (4th Cir.1984), *cert. denied,* — U.S. —, 105 S.Ct. 3479, 87 L.Ed.2d 614 (1985).

■ Entrapment is an affirmative defense that places on the defendant the initial burden of presenting some evidence that the government induced him to commit the offense charged. *United States v. Perl,* 584 F.2d 1316, 1321 (4th Cir.1978), *cert. denied,* 439 U.S. 1130, 99 S.Ct. 1050, 59 L.Ed.2d 92 (1979). Once a defendant has presented some evidence of inducement, the burden rests on the government to overcome an entrapment defense by proving the predisposition of the defendant. In this case, the trial judge apparently determined that the defendants had met their initial burden of production, and he allowed them to take their case to the jury. By finding the defendants guilty, the jury found the defendants predisposed to commit the crime.

**2.** The entrapment defense, as it exists in federal law, is a statutory defense, *United States v. Perl,* 584 F.2d 1316, 1320 (4th Cir.1978), *cert. denied,* 439 U.S. 1130, 99 S.Ct. 1050, 59 L.Ed.2d 92 (1979), while a defense based on due process arises, obviously, from the Constitution. *See United States v. Hunt,* 749 F.2d 1078, 1085 (4th Cir.1984), *cert. denied,* — U.S. —, 105 S.Ct. 3479, 87 L.Ed.2d 614 (1985). This defense has been recognized by other courts. *E.g., United States v. Haimowitz,* 725 F.2d 1561, 1577 (11th Cir.1984), *cert. denied,* 469 U.S. 1072, 105 S.Ct. 563, 83 L.Ed.2d 504 (1984); *United States v. Lomas,* 706 F.2d 886, 891 (9th Cir.1983), *cert. denied,* 464 U.S. 1047, 104 S.Ct. 720, 79 L.Ed.2d 182 (1984). While the Supreme Court has never specifically approved this defense, it has not foreclosed the possibility that police involvement in a crime may be so excessive as to require the dismissal of charges arising from the extralegal activity. *See Hampton v. United States,* 425 U.S. 484, 493–95, 96 S.Ct. 1646, 1651–

53, 48 L.Ed.2d 113 (1976) (Powell, J., concurring), 499, 96 S.Ct. at 1654 (Brennan, J., dissenting); *United States v. Russell,* 411 U.S. 423, 431–32, 93 S.Ct. 1637, 1642–43. In order to prevail under this defense, a defendant must show that the challenged governmental conduct violated "'that fundamental fairness, shocking to the universal sense of justice,' mandated by the due process clause of the fifth amendment." *Id.,* quoting *Kinsella v. United States ex rel. Singleton,* 361 U.S. 234, 246, 80 S.Ct. 297, 304, 4 L.Ed.2d 268 (1960). Only two circuits have set aside convictions on this basis. *United States v. Twigg,* 588 F.2d 373 (3rd Cir.1978); *Greene v. United States,* 454 F.2d 783 (9th Cir.1971).

Even reading the defendants' briefs broadly, this claim is raised obliquely. Nonetheless, assuming that a due process defense may preclude a conviction in some circumstances, the instant situation does not rise to that level. The government's conduct did not violate the ambits of due process. *Hunt,* 749 F.2d at 1087–88.

An appellate court may only overturn this determination by the jury "if, viewing the evidence in the light most favorable to the prosecution, no rational trier of fact could have found predisposition to exist beyond a reasonable doubt." *Hunt,* 749 F.2d at 1085. In this case, the government presented ample proof from which the jury could have found predisposition, even though it appears that Rawls initiated contact with the defendants and that the defendants had not previously sold drugs. The jury need not have found a "specific prior contemplation of criminal conduct." *United States v. Williams,* 705 F.2d 603, 618 (2d Cir.1983), *cert. denied* 464 U.S. 1007, 104 S.Ct. 524, 78 L.Ed.2d 708 (1983). "It is sufficient if the defendant is of a frame of mind such that once his attention is called to the criminal opportunity, his decision to commit the crime is the product of his own preference and not the product of government persuasion." *Id.* Predisposition "may be found from a defendant's ready response to the inducement offered." *Hunt,* 749 F.2d at 1085.

The evidence introduced at trial indicates that, once Rawls made the initial contact, the defendants responded willingly to the offer to purchase heroin, tried to contact him several times, and ultimately sold substantial quantities of drugs. From these subsequent dealings, and the quantities involved, the jury was entitled to infer that the appellants were predisposed to sell drugs, given a ready buyer.

## II. Joint Representation

Ayodeji argues that he was prejudiced by the joint representation of him and Akinseye at trial. This prejudice allegedly arose because he did not take the stand to testify, while Akinseye, his co-defendant, did.

The sixth amendment entitles a defendant in a criminal case to the effective assistance of competent counsel. *Powell v. Alabama,* 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932). Although multiple representation is not a *per se* violation of the sixth amendment, *Holloway v. Arkansas,* 435 U.S. 475, 482, 98 S.Ct. 1173, 1177, 55 L.Ed.2d 426 (1978) its very nature creates a great potential for conflicts of interest. "Defense counsel have an ethical obligation to avoid conflicting representations and to advise the court promptly when a conflict of interest arises during the course of trial." *Cuyler v. Sullivan,* 446 U.S. 335, 346, 100 S.Ct. 1708, 1717, 64 L.Ed.2d 333 (1980).

Fed.R.Crim.P. 44(c) is designed to protect a defendant's sixth amendment right to counsel when two or more defendants are represented by the same counsel. This rule requires that

the court shall promptly inquire with respect to such joint representation and shall personally advise each defendant of his right to the effective assistance of counsel, including separate representation. Unless it appears that there is good cause to believe no conflict of interest is likely to arise, the court shall take such measures as may be appropriate to protect each defendant's right to counsel.

Fed.R.Crim.P. 44(c).

This subsection was added to Rule 44 in 1979. The advisory committee notes detail the nature of the inquiry the district court should undertake. It must determine the impact which joint representation will have on the fair administration of justice. The court should ask the defendants, and their counsel, about the likelihood of any conflict of interest.

In the absence of a specific objection, the trial court may assume that joint representation does not present any conflict, unless the court knows or reasonably should know that a particular conflict exists. *United States v. Ramsey,* 661 F.2d 1013, 1018 (4th Cir.1981), *cert. denied,* 455 U.S. 1005, 102 S.Ct. 1642, 71 L.Ed.2d 874 (1982). If the court is aware, or should be aware, of a particular conflict, it should conduct a *sua sponte* inquiry into its existence.

A defendant may waive his right to conflict-free representation, *Holloway v. Arkansas,* 435 U.S. 475, 483 n. 5, 98 S.Ct. 1173, 1178 n. 5, 55 L.Ed.2d 426 (1978),

provided that the waiver is knowing, intelligent, and voluntary. *Brady v. United States,* 397 U.S. 742, 748, 90 S.Ct. 1463, 1469, 25 L.Ed.2d 747 (1970) ("[w]aivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences"). Rule 44 and its notes discuss the type of waiver which the district court should secure. The court must personally address each defendant and inform him of the potential hazards of representation by a single attorney, as well as his right to separate representation. In turn, the defendants are free to ask the court questions about the nature and consequences of the representation:

> Most significantly, the court should seek to elicit a narrative response from each defendant that he has been advised of his right to effective representation, that he understands the details of his attorney's possible conflict of interest and the potential perils of such a conflict, that he has discussed the matter with his attorney or if he wishes with outside counsel, and that he voluntarily waives his Sixth Amendment protections.

Fed.R.Crim.P. 44(c) Advisory Committee Note.

The trial court discussed the possibility of conflict several times. At the arraignment, the United States Magistrate recommended that the defendants obtain separate counsel. The trial judge presided over an appeal from the Magistrate's order releasing one of the defendants on bond. He examined both defendants, under oath, about joint representation. The district judge perceived a conflict at the bond hearing, since the Magistrate recommended the release of one defendant and the detention of the other. The trial judge addressed the range of possible conflicts which might arise during trial, Supp.App. 7–22, and discussed in particular the possibility of one defendant testifying:

> Sometimes one of the defendants represented by a lawyer will take the stand to testify in his own behalf. In order to represent the other defendant fairly, the lawyer should question the defendant on the stand as completely as possible, but he will not be able to do that because he cannot ask the defendant about anything the defendant has told him in confidence.

Supp.App. 12. Both defendants executed waivers, stating that they had "carefully considered" the trial court's explanation and, nonetheless, chose to proceed with joint representation "even though [my attorney] is also representing [the co-defendant] ... and my interests in this proceeding may conflict with" his. Supp.App. 693–95.

Before Akinseye testified, the court examined both defendants and informed them of their right to remain silent or to testify on their own behalf. The district judge did not repeat his warning to Ayodeji about dual representation. Supp.App. 606–11.

 We hold that Ayodeji's pretrial waiver was a valid one. Both the United States Magistrate and the district judge informed him about the dangers of joint representation and the possible conflicts which could arise. Thereafter, he signed a pretrial waiver statement.

 We do think, however, that the better practice would have been for the trial court to conduct a further rule 44 inquiry when Akinseye took the stand and, if necessary, secure a further waiver.[3] Doing so would further the integrity of the trial process. Defendants would be aware of the particular nature of any conflicts which come into sharp focus during trial. *Cf. United States v. Agosto,* 675 F.2d 965,

---

**3.** In this regard, the Advisory Committee Note states that the mere fact that a rule 44(c) inquiry was conducted in the early stages of the case does not relieve the court of all responsibility in this regard thereafter. The obligation placed upon the court by rule 44(c) is a continuing one, and thus in a particular case further inquiry may be necessary on a later occasion because of new developments suggesting a potential conflict of interest. *Cf. United States v. Agosto,* 675 F.2d 965, 976 (8th Cir.1982), *cert. denied,* 459 U.S. 834, 103 S.Ct. 77, 74 L.Ed.2d 74 (1982) (refusing to adopt a *per se* rule that a knowing and intelligent pretrial waiver continues throughout the trial under all circumstances).

976 (8th Cir.1982), *cert. denied*, 459 U.S. 834, 103 S.Ct. 77, 74 L.Ed.2d 74 (1982) ("it is impossible to describe in full detail the conflicts which may arise during the trial"). In this case, however, the trial court warned the defendants about the exact scenario which arose during trial: one defendant taking the stand while the other remained silent. This warning notwithstanding, the defendants chose to proceed to trial with the same counsel.

Accordingly, we hold that the trial court adequately complied with Fed.R.Crim.P. 44(c), that the nature of the potential conflicts was sufficiently communicated to Ayodeji, and that he made a knowing and intelligent waiver.

### III. The Sentence Imposed

The defendants' remaining claims are without merit and, with one exception, need not be addressed further. Both challenge the sentences they received, Akinseye on the ground that it is excessive, Ayodeji on the ground that he was not adequately represented by counsel at sentencing.

■■■ Akinseye argues that his thirty year sentence is excessive in light of the fact that he is a first offender who arguably was entrapped. However, it is well settled that a federal district judge is vested with broad discretion in the sentencing phase of criminal prosecutions, and that sentences imposed within the statutory limits are generally not reviewed on appeal. *United States v. Schocket*, 753 F.2d 336, 341 (4th Cir.1985). A sentence within statutory limits will not be disturbed "unless a trial judge has grossly abused the discretion afforded him." *Id.*, quoting *United States v. Hodge*, 394 F.2d 122 (4th Cir. 1968). No such abuse has occurred here.

To the extent that Ayodeji is raising claims of ineffective assistance of counsel at the sentencing phase, we decline to address this issue. At this point it is premature, and we find the present record too bare for review of such a claim. *See United States v. Lurz*, 666 F.2d 69, 78 (4th Cir.1981), *cert. denied*, 459 U.S. 843, 103 S.Ct. 95, 74 L.Ed.2d 87 (1982) (advising that a 28 U.S.C. § 2255 proceeding is the better

way to raise claims of ineffective assistance).

Therefore, the convictions and sentences are

**AFFIRMED.**