UNITED STATES of America,
Plaintiff–Appellee,

v.

Angela B. SWARTZ, Defendant–Appellant.

No. 91–6604.

United States Court of Appeals,
Fourth Circuit.

Argued April 10, 1992.
Decided Sept. 16, 1992.

 

OPINION

WIDENER, Circuit Judge:

Angela B. Swartz challenges the sentence imposed upon her by the United States District Court for the District of South Carolina following her conviction on a plea of guilty to charges of conspiracy, bank fraud, making false statements in a loan application, and money laundering. Mrs. Swartz alleges that she was denied her Sixth Amendment right to effective assistance of counsel during her sentencing in that her counsel simultaneously represented both her and her co-defendant, resulting in an actual conflict of interest. We agree that an actual conflict of interest developed during the sentencing proceedings of Mrs. Swartz and her co-defendant. Being of opinion that the conflict adversely affected her attorney's performance and was not effectively waived by Mrs. Swartz, we vacate her sentence and remand for resentencing.

I

In November, 1989, Mrs. Swartz became aware of the possibility that she would be indicted for her conduct in connection with certain fraudulent transactions at Republic National Bank in Columbia, South Carolina, where she had been employed as a loan officer. At that time Mrs. Swartz contacted David A. Fedor, Esq., in an attempt to secure his representation in the anticipated criminal proceedings. Mrs. Swartz initially arranged to have Fedor represent her alone, but on or about November 12, 1989, it was agreed that Fedor would represent both Mrs. Swartz and Weldon D. Waites, her co-conspirator in the bank fraud scheme. On November 20, 1989, Waites and Mrs. Swartz executed a written waiver of the potential conflict of interest created by Fedor's multiple representation.

On May 16, 1990, Mrs. Swartz and Waites were indicted, and on June 20, 1990, a federal grand jury returned a 29–count superseding indictment charging them, among others, with various crimes involving conspiracy, bank fraud, and money

Arthur Camden Lewis, Lewis, Babcock & Hawkins, Columbia, S.C., argued (Cameron B. Littlejohn, Jr., on brief), for defendant-appellant.

John William McIntosh, First Asst. U.S. Atty., Columbia, S.C., argued (E. Bart Daniel, U.S. Atty., Gregory P. Harris, Asst. U.S. Atty., Matthew R. Hubbell, Asst. U.S. Atty., on brief), for plaintiff-appellee.

Before WIDENER, Circuit Judge, BUTZNER, Senior Circuit Judge, and MERHIGE, Senior District Judge for the Eastern District of Virginia, sitting by designation.

laundering. On May 30, 1990,[1] Mrs. Swartz and Waites appeared before the United States Magistrate for their initial appearance and arraignment. Upon learning that attorney Fedor was representing both Mrs. Swartz and Waites, the magistrate conducted the inquiry required by Fed.R.Crim.P. 44(c).[2] In so doing, the magistrate described generally the potential conflicts of interest that may arise when a single attorney undertakes to represent codefendants.[3] Following this description of the potential danger of conflicts of interest, the magistrate asked both Mrs. Swartz and Waites if either of them had "any question, at all, in your mind as to there being a conflict in your own mutual interest insofar as defending yourself in this case is concerned?" Mrs. Swartz and Waites indicated that they had no such questions, and accordingly the magistrate, finding no "readily perceptible conflict," accepted their decision to proceed under the joint representation of Fedor.

Plea negotiations ensued, as a result of which Mrs. Swartz and Waites executed plea agreements with the Government in September of 1990. Mrs. Swartz agreed to plead guilty to four counts of the indictment and to cooperate fully with the Government's investigation and prosecution of the other defendants involved in the bank fraud scheme. In exchange, the Government agreed to dismiss the remaining counts against her and, assuming her cooperation was found sufficiently forthcoming and helpful, to move the sentencing court for a downward departure for substantial assistance pursuant to U.S.S.G. § 5K1.1. Waites' plea agreement, in contrast, contained no promise by the Government to move for any downward departure; rather, it simply provided that Waites would plead guilty to thirteen counts of the indictment, in exchange for which the Government would dismiss the remaining counts of the indictment.

Pursuant to the plea agreements, on September 27, 1990 Swartz and Waites appeared before the district court to enter their respective guilty pleas. Before beginning the Fed.R.Crim.P. 11 colloquy, the court noticed that both defendants were represented by attorney Fedor. At that time the court asked Fedor whether the magistrate had conducted "a hearing on the possible conflict of interest of one counsel representing two defendants." To this inquiry Fedor replied "Yes, he did, Your Honor. We went into that fully. We signed documents and had sworn testimony by both the defendants, and Magistrate Gambrell allowed us to proceed as we do."[4] The district court accepted this, and no further reference was made to the issue during the plea proceeding.

---

**1.** This arraignment apparently was on the initial indictment, which was handed down on May 16, 1990.

**2.** Fed.R.Crim.P. 44(c) provides as follows:

**Joint Representation.** Whenever two or more defendants have been jointly charged pursuant to Rule 8(b) or have been joined for trial pursuant to Rule 13, and are represented by the same retained or assigned counsel or by retained or assigned counsel who are associated in the practice of law, the court shall promptly inquire with respect to such joint representation and shall personally advise each defendant of the right to the effective assistance of counsel, including separate representation. Unless it appears that there is good cause to believe no conflict of interest is likely to arise, the court shall take such measures as may be appropriate to protect each defendant's right to counsel.

**3.** The most specific illustration of a conflict of interest offered by the magistrate involved an attorney who had represented two co-defendants, one of whom ultimately testified against the other at their joint trial. The magistrate then stated:

> Now, that is probably the most stark illustration of a conflict that any lawyer in this room could conjure up, where a man is representing two people, and one of them ends up testifying against the other one. It goes all the way back to the New Testament, Book of St. Matthew, where Christ said: "A slave cannot serve two masters."

**4.** It appears that Fedor's reference to signing documents referred to the waiver of conflict that Swartz and Waites had executed prior to the arraignment, as it appears that no documents were signed at arraignment. We also note that neither Swartz nor Waites gave "sworn testimony" during the magistrate's Rule 44(c) inquiry, though they did inform the magistrate of their desire to go forward under the joint representation of Fedor.

Following the acceptance of the guilty pleas, the Government called Mrs. Swartz and Waites to testify at the trial of one of their co-defendants, David Cole.[5] During that trial Mrs. Swartz became concerned that Waites was knowingly misrepresenting the nature and extent of her involvement in the bank fraud. She thereafter approached Fedor and told the attorney that she was concerned about the apparent development of a conflict of interest. Mrs. Swartz feared that Fedor would be unable properly to plead her case at sentencing if he were bound by his ethical obligations not to say anything derogatory about Waites. She therefore asked Fedor to withdraw from his representation of Waites and continue as her attorney. At this suggestion Fedor initially offered, instead, to withdraw as Mrs. Swartz's counsel, as well as Waites'. Ultimately, however, Fedor advised Mrs. Swartz that he had "given the situation considerable thought," and that he could fairly represent her in her sentencing, which she accepted.

Mrs. Swartz later learned that she would be called by the Government to testify at Waites' sentencing hearing. This development caused her again to ask Fedor to withdraw from his representation of Waites. Fedor again assured her that he could adequately represent her without withdrawing as Waites' counsel, and Mrs. Swartz apparently accepted that assertion.

The conflict of interest of which Mrs. Swartz now complains developed fully during the sentencing hearings of her and Waites, both of which were held on May 6, 1991. Waites' was the first of the two sentencing hearings that day. At that hearing Waites was represented by Fedor, as well as Fedor's co-counsel John M. Young, Esq. and J. Edward Holler, Esq. Fedor, Young, and Holler divided the responsibilities attendant to arguing Waites' case, each taking part at various times throughout the proceeding.

An understanding of Waites' argument at sentencing is necessary to an understanding of the nature of the conflict of interest that arose on the part of Fedor. Though that argument was rather ill-defined as a matter of Sentencing Guidelines law, and ultimately was unavailing, it caused Fedor and his co-counsel to take a position that cannot be reconciled with Fedor's duty of loyalty to Mrs. Swartz. Following their respective guilty pleas, both Mrs. Swartz and Waites were faced with the same base offense level under the Guidelines, namely 20. Both defendants then received a six-level upward adjustment pursuant to U.S.S.G. § 2S1.1(b)(2)(G), reflecting that the value of the funds involved in the money laundering operation exceeded $2,000,000.

At this point the Guidelines calculations of the two defendants diverged. Waites received a further four-level upward adjustment for his role in the offense, as the court accepted the probation officer's determination that he "was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1(a). This increase would have raised his total offense level to 30. Ultimately, however, the court fixed his total offense level at 28. The record does not reveal the basis of the two-level decrease; but in light of Waites' guilty plea, we might surmise that he was awarded the adjustment for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a). Waites' total offense level of 28, combined with a criminal history category of I, gave him a potential imprisonment range of from 78 to 97 months.

Mrs. Swartz, on the other hand, enjoyed a slightly more favorable Guideline sentence score. She also received the six-level upward adjustment reflecting the total dollar value of the money laundering scheme. However, rather than the four-level adjustment that Waites received for his role in the offense, Swartz received a two-level upward adjustment because she "abused a position of public or private trust, or used a special skill in a manner that significantly

**5.** The following facts regarding the Cole trial and the subsequent meeting between Swartz and Fedor are derived from the testimony of Swartz at the hearing on her motion to correct sentence in the district court, and are not disputed by the government.

facilitated the commission or concealment of the offense." U.S.S.G. § 3B1.3. After a two-level reduction for acceptance of responsibility, Swartz's total offense level stood at 26, yielding, with a criminal history category of I, an imprisonment range of 63 to 78 months. Finally, on the Government's motion the district court granted Swartz a four-level downward departure on the grounds that she had provided substantial assistance to the Government in the investigation and prosecution of others involved in the bank fraud and money laundering scheme. The resulting total offense level of 22 yielded an imprisonment range of 41 to 51 months. See U.S.S.G. Ch. 5, Part A (Sentencing Table). Within this range the court sentenced Swartz to a term of imprisonment of 48 months.

The central theme of Waites' argument at his sentencing hearing was that though his culpability was equal to that of Mrs. Swartz, he was unfairly receiving a harsher sentence than her. Throughout Waites' sentencing his counsel, Fedor, Holler, and Young, argued that he was entitled to some type of downward adjustment in his total offense level or to a downward departure on the grounds that he deserved the same treatment as Swartz.

This strategy, which attorney Young aptly described as "what's good for the goose is good for the gander," required Fedor and his co-counsel to equate the culpability of one client, Mrs. Swartz, with that of another client, Waites. Because the respective presentence reports and plea agreements reflected that, in fact, Mrs. Swartz was less culpable than Waites, and because her best interests with regard to her own sentencing required that she be portrayed as less culpable and more cooperative than her co-defendants, this strategy was inherently damaging to Mrs. Swartz's position. The transcript of Waites' sentencing hearing is replete with statements by Fedor, Holler, and Young that could well be interpreted as detrimental to Mrs. Swartz's interests.[6] The following exchange between Young, Fedor, and the district court highlights the attorney's ethical predicament:

> MR. YOUNG: [M]y argument which I am still going back to is that this is something that can be altered by you, the ultimate sentencer, because it's not right. I mean, if Ms. Swartz would have been given the four points for the organizer, I wouldn't have any quarrel here, but she wasn't.
>
> THE COURT: Mr. Fedor, do you represent Ms. Swartz?
>
> MR. FEDOR: Yes.
>
> THE COURT: You represent Ms. Swartz, too?
>
> MR. FEDOR: Yes, sir. I do not insofar as the probation sentencing report, no. I represent them both because they both came to me, Your Honor, the day this transpired.
>
> THE COURT: Are you standing here representing Mr. Waites now?
>
> MR. FEDOR: Yes, sir, I am. My job, Your Honor, no matter what your ruling is, is to get them the lowest number possible. No conflict whatsoever.
>
> THE COURT: Well, I think Mr. Young would be happy if I raised Ms. Swartz's offense level to the same

---

**6.** See, e.g., J.A. at 134, where attorney Young stated that: "I am going to argue at a later time that equally culpable co-defendants should be treated equally. And in this particular case, Mr. Waites has not been." He further argued that:

> [B]asically Mr. Waites was given a four-point enhancement by Officer Norwood Dickerson for being an organizer of the offense. And Ms. Swartz, we contend, was an equal organizer in that she worked at the bank and that none of this could have occurred had it not been for her. She was kind of the spigot through which the money flowed.
>
> And as such, she did not receive a four point enhancement as an organizer and lead-

er, because the probation officer, Sandra Marie, put her outside the category of that and put her into the category of a breach of trust, which allowed her to get only a two point enhancement.

> Now, the bottom line is what difference does this make? As near as we can determine, the enhancement—I mean the range for Ms. Swartz is 63 to 78 months. The range for Mr. Waites is 78 to 90 months. That doesn't even consider the fact that Ms. Swartz, as I understand it, is going to probably get a motion for downward departure from the Government.

J.A. at 154.

thing as Mr. Waites'. Is that your position?

MR. FEDOR: No, sir.

MR. YOUNG: Judge, that's incorrect. That is putting words—

THE COURT: You are arguing about the disparity. If I equalize them, there won't be any disparity.

MR. YOUNG: What I'm saying to you, in the sound discretion you have up there as a Federal Judge, equalize them by giving him a two-point [downward departure] under 5K2.0.

J.A. at 143–44. Thus, confronted with the court's recognition of Fedor's conflict of interest, the attorney could be said to have disavowed his representation of Mrs. Swartz as to the very matter at issue in those proceedings.

The conflict of interest became even more pronounced when, later in Waites' sentencing hearing, the Government called Mrs. Swartz to testify against Waites. She was called to rebut Waites' contention that he had been coerced into some of the fraudulent conduct in question. Though her testimony in this regard in fact was more adverse to Waites' interests than her own, that one client of Fedor's was testifying against another in the same proceeding itself was sufficient indication of an attorney conflict of interest to give the district judge pause. The judge questioned Fedor on why he was persisting in the representation of both Waites and Mrs. Swartz. In response Fedor stated that Mrs. Swartz had effectively waived the conflict and that at arraignment the magistrate had conducted a sufficient inquiry into the conflict. Apparently satisfied with this, the court did not pursue the conflict issue further and proceeded to deny Waites' motion for downward departure.

As we have already noted, following Waites' sentencing hearing the court proceeded to pass sentence on Mrs. Swartz. No further mention of Fedor's conflict of interest was made by anyone at Mrs. Swartz's sentencing hearing. However, on May 13, 1991, the same day judgment was entered on her sentence, Mrs. Swartz filed with the district court a *pro se* motion

seeking, *inter alia*, resentencing on the grounds that her Sixth Amendment right to effective assistance of counsel had been violated in that she and Waites had been "represented by the same law firm." On July 2, 1991, the district court held a hearing on that motion. Mrs. Swartz, now represented by new retained counsel, there testified to the above-described events. After hearing her testimony and argument from her counsel, the district court denied the motion, largely on the grounds that she had received the lowest sentence that the district court thought appropriate, and that her counsel's conflict of interest had not affected that determination. She now appeals from that ruling.

## II

■ The Sixth Amendment to the United States Constitution guarantees to all criminal defendants the right to effective assistance of counsel. See *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). A necessary corollary to the right to effective assistance of counsel is the right to representation free from conflicts of interest. See, e.g., *Wood v. Georgia*, 450 U.S. 261, 101 S.Ct. 1097, 67 L.Ed.2d 220 (1981); *United States v. Ramsey*, 661 F.2d 1013, 1017 (4th Cir.1981), cert. denied, 455 U.S. 1005, 102 S.Ct. 1642, 71 L.Ed.2d 874 (1982).

Claims of ineffective assistance of counsel due to attorney conflict of interest in a general sense are governed by the familiar two-part standard of *Strickland, supra*. Under that standard, the defendant must show first that his counsel's performance fell below the level expected of a reasonably competent attorney. *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064. Second, in the usual case the defendant must establish prejudice by showing "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694, 104 S.Ct. at 2068.

■ However, the courts have developed a slightly different analysis where a defendant bases a claim of ineffective assistance on an allegation that the attorney in ques-

tion was laboring under an actual conflict of interest. The performance element of the *Strickland* analysis is satisfied when the defendant establishes that his counsel was involved in an actual conflict of interest, as "[t]he effective performance of counsel requires meaningful compliance with the duty of loyalty and the duty to avoid conflicts of interest, and a breach of these basic duties can lead to ineffective representation." *United States v. Tatum*, 943 F.2d 370, 375 (4th Cir.1991); see also *Strickland*, 466 U.S. at 692, 104 S.Ct. at 2067. As for the prejudice requirement, "[w]hen counsel for a defendant in a criminal case has an actual conflict of interest when representing the defendant and the conflict adversely affects counsel's performance in the defense of the defendant, prejudice to the defense is presumed," thus entitling the defendant to a new trial or sentencing. *Tatum*, 943 F.2d at 375; see also *Strickland*, 466 U.S. at 692, 104 S.Ct. at 2067; *Cuyler v. Sullivan*, 446 U.S. 335, 348–50, 100 S.Ct. 1708, 1718–19, 64 L.Ed.2d 333 (1980). And it has even been said that such an actual conflict of interest may never be harmless error. See *Glasser v. United States*, 315 U.S. 60, 76, 62 S.Ct. 457, 467–68, 86 L.Ed. 680 (1942).

Under the foregoing analysis, then, we must determine 1) whether Mrs. Swartz's attorney Fedor faced an actual conflict of interest during her sentencing proceeding; and 2) if so, whether that actual conflict resulted in an adverse effect on Fedor's performance in advancing Mrs. Swartz's position. As this court has noted, these are fact-based inquiries that often will be intertwined; thus the same facts regarding the representation in question may supply the answer to both questions. See *Tatum*, 943 F.2d at 375.

■ First, we are of opinion that the facts as recounted in part I, *supra,* reveal that Fedor was laboring under an actual conflict of interest during the sentencing proceedings of his clients, Mrs. Swartz and Waites. The tack chosen by Fedor and his co-counsel[7] with respect to Waites' sentencing, *i.e.,* that Mrs. Swartz's culpability was the same as Waites', caused the interests of Fedor's two clients to diverge. At that moment, as well as when Mrs. Swartz was called to testify against Waites, what might have been only a potential conflict developed into an actual and present conflict.

For largely the same reasons we likewise are satisfied that the conflict of interest adversely affected Fedor's performance in representing Mrs. Swartz. "When the attorney is actively engaged in legal representation which requires him to account to two masters, an actual conflict exists when it can be shown that he took action on behalf of one. The effect of his action of necessity will adversely affect the appropriate defense of another." *Tatum*, 943 F.2d at 376. Here Fedor, by his co-counsel, advanced a legal argument that benefited the position of one client, Waites, to the detriment of another client, Mrs. Swartz. Thus, we hold that Mrs. Swartz has established an actual conflict of interest sufficient to constitute a deprivation of her sixth amendment right to counsel.

Our finding of an actual conflict of interest does not end our inquiry, however, as the Sixth Amendment right to conflict-free representation, like the right to counsel itself, may be the subject of a waiver. See *Cuyler*, 446 U.S. at 347, 100 S.Ct. at 1717; *United States v. Akinseye*, 802 F.2d 740, 744–45 (4th Cir.1986), cert. denied, *sub nom. Ayodeji v. United States*, 482 U.S. 916, 107 S.Ct. 3190, 96 L.Ed.2d 678 (1987).

---

7. As we have noted in part I, *supra,* much of the argument at Waites' sentencing hearing that was particularly adverse to Swartz's interests was conducted not by Fedor personally but by his co-counsel, Young. Attorney Young may have appeared as counsel of record for Waites only. The record does not reveal whether Fedor and Young were law partners or members of the same firm. However, Fedor was also present throughout Waites' hearing and indeed discussed with the district judge the conflict of interest of which Swartz later complained. That Young actually presented some of the most damaging arguments does not change our opinion that Fedor had a constitutionally significant conflict of interest. One attorney burdened by an actual conflict of interest cannot cure that conflict by the substitution of another attorney who is himself free from conflict. See *Tatum*, 943 F.2d at 378–79.

Of course, to be effective such a waiver must be knowing, intelligent, and voluntary. *Akinseye*, 802 F.2d at 745.

In the federal courts, Fed.R.Crim.P. 44(c) provides a uniform mechanism for identifying potential attorney conflicts of interest and, where appropriate, for ensuring that a defendant who desires to waive such a conflict does so in a knowing, intelligent, and voluntary manner. When a district court is faced with multiple defendants who seek to be jointly represented,

> [t]he court must personally address each defendant and inform him of the potential hazards of representation by a single attorney, as well as his right to separate representation. In turn, the defendants are free to ask the court questions about the nature and consequences of the representation:
>
>> Most significantly, the court should seek to elicit a narrative response from each defendant that he has been advised of his right to effective representation, that he understands the details of his attorney's possible conflict of interest and the possible perils of such a conflict, that he has discussed the matter with his attorney or if he wishes with outside counsel, and that he voluntarily waives his Sixth Amendment protections.

*Akinseye*, 802 F.2d at 745 (quoting Fed.R.Crim.P. 44(c) Advisory Committee Note). When a defendant waives such a conflict after a properly-conducted rule 44(c) hearing, that conflict generally may not be the basis of a later claim of ineffective assistance of counsel.

■ However, we have recognized that a single waiver pursuant to rule 44(c) may not serve to waive all conflicts of interest that arise throughout the course of that defendant's criminal proceedings. See *Akinseye*, 802 F.2d at 745–46 & n. 3. The district court has a continuing obligation under rule 44(c) to guard against conflicts of interest that may worsen as circum-

stances change during the course of the representation.

In the instant case Mrs. Swartz and Waites first appeared before a court as the joint clients of Fedor upon their appearance before the United States Magistrate. As we have noted, the magistrate informed Mrs. Swartz and Waites of the hazards of multiple representation and ultimately secured their waivers of Fedor's potential conflict of interest. Though the district court discussed the conflict with Fedor on two later occasions,[8] at the plea acceptance hearing and at sentencing, no further rule 44(c) inquiry was undertaken after that at arraignment.

■ We are of opinion that Mrs. Swartz's waiver under the specific circumstances of this case was insufficient to waive Fedor's conflict of interest as it developed at her and Waites' sentencing. When Fedor and his co-counsel chose to argue on behalf of Waites in a manner directly adverse to the interests of Mrs. Swartz, they changed the circumstances attendant to Fedor's multiple representation so as to vitiate the waiver made earlier. Indeed, the district judge himself recognized, while expressing surprise at the seriousness of the conflict of interest afoot at Waites' sentencing, that the circumstances surrounding Fedor's joint representation had changed significantly since the time of arraignment and acceptance of Mrs. Swartz's guilty plea. "A defendant cannot knowingly and intelligently waive what he does not know," *Hoffman v. Leeke*, 903 F.2d 280, 289 (4th Cir.1990), and we think it clear that Mrs. Swartz could not have known at the time of her waiver of the serious nature of the conflict of interest that would later develop at her sentencing.

Finally, we note that our decision in *Akinseye, supra,* does not compel the contrary result. *Akinseye* also involved a claim of ineffective assistance of counsel by a defendant, Ayodeji, who had been represented at trial by the same attorney

---

8. For example, at Waites' sentencing, A.205:

MR. FEDOR: Okay. Let me hear what her testimony is and then I can judge from there.

THE COURT: All right. Let me say this to you: You know what the ethical rules are and I know what they are. I think you are—you've got a serious conflict of interest.

# 1050

as his co-defendant, Akinseye. At trial Akinseye chose to testify in his own behalf, while Ayodeji did not. Ayodeji was convicted, and on appeal he argued that his counsel was ineffective due to the actual conflict of interest created by the multiple representation. Ayodeji argued that his counsel faced a conflict in that the lawyer's cross-examination of his co-defendant would be limited by the lawyer's duties of loyalty and confidentiality to the testifying co-defendant.

However, before trial Ayodeji had twice waived his right to conflict-free representation, once before a United States Magistrate and once before the district judge. Under the district court's supervision both defendants had executed written waivers of the conflict, the details of which had been thoroughly explained to them. However, no further waiver or rule 44(c) inquiry was held at the time that Akinseye took the stand, and Ayodeji thereafter argued that his pre-trial waiver was ineffective to waive the conflict as it had developed at trial.

We rejected that argument and held that Ayodeji's pre-trial waiver of his attorney's conflict of interest was effective as a waiver of the actual, present conflict of interest that took shape as his co-defendant took the stand. There we held that because the district court had warned Ayodeji of the *precise* form of conflict of interest that actually developed at trial, that pre-trial waiver remained effective when that conflict of interest actually came into being. Even so, we were careful to note that

> the better practice would have been for the trial court to conduct a further rule 44 inquiry when Akinseye took the stand and, if necessary, secure a further waiver. Doing so would further the integrity of the trial process. Defendants would be aware of the particular nature of any conflicts which come into sharp focus during trial.

See *Akinseye*, 802 F.2d at 745 (footnote omitted).

■ In the instant case, we simply cannot say that the magistrate's rule 44(c)

MR. FEDOR: But Your Honor, let me call this to your attention. This hearing was held in front of you. It took about two hours. The same thing with Judge Gambrell. And the documents we have—

inquiry sufficiently warned Mrs. Swartz of the possibility that her counsel might later argue a theory entirely incompatible with her interests. In contrast to the specific nature of the warning afforded Ayodeji in the *Akinseye* case, the magistrate's statements at Mrs. Swartz's arraignment were largely general in nature; in no way did they come close to warning her of the particular conflict that in fact arose. Therefore, we conclude that Mrs. Swartz's waiver in this case falls short of the line drawn in *Akinseye*, and thus the constitutional deprivation created by Fedor's waiver was not effectively waived.

## III

For the foregoing reasons, Mrs. Swartz's sentence is vacated and the case is remanded for resentencing.

VACATED AND REMANDED.

THE COURT: I didn't know what was going to happen at the sentencing phase.