887 F.2d 1082
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Morris Anthony POLLARD, Defendant-Appellant.
 No. 89-5048.
 United States Court of Appeals, Fourth Circuit.
 Submitted: July 24, 1989.
Decided: Sept. 27, 1989.
 
 James H. Carson, Jr., on brief, for appellant.
 Harry Thomas Church, Assistant United States Attorney, on brief, for appellee.
 Before HARRISON L. WINTER, SPROUSE and WILKINSON, Circuit Judges.
 PER CURIAM:
 
 
 1
 Morris Anthony Pollard (a/k/a M. Pollack) appeals his conviction in the United States District Court for the Western District of North Carolina at Charlotte for conspiracy to possess with intent to distribute in excess of 50 grams of cocaine base and cocaine in violation of 21 U.S.C. Sec. 846, possession with intent to distribute in excess of 50 grams of cocaine base in violation of 21 U.S.C. Sec. 841(a)(1), and possession with intent to distribute cocaine in violation of 21 U.S.C. Sec. 841(a)(1). Appellant argues that the district court erred in denying defendant's motion to suppress cocaine obtained in a warrantless search of certain luggage, and by allowing into evidence both luggage affixed with a tag bearing the name M. Pollack and a card taken from defendant's pocket bearing the name and address of a probation officer. In addition, defendant challenges the sufficiency of the evidence to sustain his conviction for conspiracy. We find no merit in these contentions and affirm the judgment of the district court.
 
 I.
 
 2
 On August 25, 1988 two men later identified as appellant Morris Anthony Pollard and Al Walden were observed by agents from the State Bureau of Investigation deplaning an incoming Piedmont flight arriving from Miami. As the two men proceeded down the concourse, Agents Jack Davis and Steve Akers approached them and displayed their credentials.
 
 
 3
 The agents asked appellant and Walden to see their airline tickets and Walden handed them a ticket folder containing two tickets, one in the name Marv Pollack and one in his name. The tickets indicated a transfer to another Piedmont flight continuing on to Charleston, South Carolina. Agent Davis noted three baggage claim stubs affixed to the folder and memorized the numbers on the stubs. He also noted that appellant and Walden had been assigned adjoining seats.
 
 
 4
 The agents then questioned appellant and Walden. Appellant told the agents that he was en route to attend his mother's funeral and that he and Walden were traveling together. Walden initially stated that his travel was for business. When reminded of appellant's mention of the funeral, however, he agreed that the two were traveling to the funeral.
 
 
 5
 The agents advised appellant and Walden that they were not under arrest. Agent Davis indicated that they were looking for drugs being transported through the airport and asked appellant and Walden for consent to search their persons and their baggage. Appellant responded that their baggage was already on the plane. Agent Davis indicated that the bags could be located and he again asked for consent to search their persons and baggage. Pollard responded, "Sure, you want to do it right here?"
 
 
 6
 The four men went to a nearby restroom where the agents searched the appellant and Walden. After finding nothing, the agents walked with appellant and Walden toward the departure gate for their flight. Agent Davis, who was walking with Walden, indicated to him that the agents planned to find and search the baggage. Walden replied, "That's fine." There is no indication in the record that appellant, who was walking with Agent Akers, heard or responded to this exchange.
 
 
 7
 The agents then proceeded to the ramp where the aircraft was located and identified three pieces of baggage with numbers matching the baggage stubs affixed to the ticket folder produced by Walden. One of the bags had a Piedmont identification tag with the name M. Pollack written on it. The agents searched this bag and recovered a can containing crack cocaine. A search of one of the other two bags revealed a quantity of both powder cocaine and crack cocaine.
 
 
 8
 The agents then proceeded to the passenger area of the terminal where neither appellant nor Walden was visible. The agents also found that neither of the two men was on the outgoing flight to Charleston. Appellant Pollard was later apprehended on the sidewalk a short distance from the bus station in downtown Charlotte.
 
 
 9
 Before trial, appellant Pollard filed a timely motion to suppress evidence seized in the warrantless search of the luggage. The motion was denied following a hearing. After a jury trial in the United States District Court for the Western District of North Carolina at Charlotte, appellant was convicted of the aforementioned counts and sentenced to twenty years in prison.
 
 
 10
 Pollard now appeals.
 
 II.
 
 11
 A search conducted pursuant to a valid consent is an exception to the Fourth Amendment's general requirement of a warrant. When the government "seeks to rely upon consent to justify the lawfulness of a search, [it] has the burden of proving that the consent was, in fact, freely and voluntarily given." Schneckloth v. Bustamonte, 412 U.S. 218, 222 (1973), citing Bumper v. North Carolina, 391 U.S. 543, 548 (1968). Additionally, like a search under a warrant, the scope of a consent search is limited by the "terms of its authorization." Walter v. United States, 447 U.S. 649, 656-57 (1980). A district court's finding of consent based on the totality of the circumstances is binding on an appellate court unless that finding is clearly erroneous. United States v. Morrow, 731 F.2d 233, 236 (4th Cir.1984).
 
 
 12
 Appellant contends that he gave consent to search his person but not his baggage. According to appellant, the words "Sure, you want to do it right here?" could only apply to his person since he had indicated that the bags were on the plane.
 
 
 13
 We disagree. Each time Agent Davis asked for defendant's consent to search he used the words "person and bags." Appellant's initial affirmative response to that request is not reasonably limited by the words "You want to do it right here?" which was directed toward the location rather than the scope of the search. In light of Agent Davis' unequivocal and specific request to search both appellant's person and bags, with the added assurance that the bags could be located without problem, Pollard's statement "Sure, you want to do it here," may not reasonably be held to exclude a search of the baggage.
 
 III.
 
 14
 Appellant contends that the district court erred in admitting into evidence a baggage tag, found on the luggage containing cocaine base and bearing the name M. Pollack. At trial defendant made a general objection to the introduction of said evidence. His theory on appeal is that the tag constituted inadmissible hearsay. Appellant contends that his name on the bag is an "out-of-court statement made by some unknown person introduced to prove the truth of its contents; that is, that the bag was the bag of M. Pollack."
 
 
 15
 The luggage tag was properly admitted into evidence for the non-hearsay purpose of showing that someone checked luggage bearing the name M. Pollack onto the Piedmont flight, from which the jury could infer that person was Pollack himself. Admission for this purpose is permissible as long as other evidence connects Pollack with the person checking the luggage. United States v. Saint Prix, 672 F.2d 1077, 1083 (2d Cir.1982).
 
 
 16
 Such evidence was present in this case. Appellant and Walden indicated that their bags were on the flight to Charleston. Thereafter, the agents located the bags, including the bag in question, on a baggage cart of luggage that had been originally on appellant's Piedmont flight from Miami and was being transferred onto the Piedmont flight to Charleston. The baggage ticket on the bag matched one of the numbers on the flight envelope produced by defendant Walden, appellant's traveling companion. The name Pollack appeared on both appellant's airline ticket and on the baggage tag. Given these facts, the bag with the tag bearing the name M. Pollack was properly admitted into evidence.
 
 IV.
 
 17
 Appellant further contends that the court erred in allowing into evidence a card found in his pocket bearing the name and telephone number of a probation officer. He argues that it constituted a "roundabout way" to admit a prior conviction.
 
 
 18
 The card first came to the jury's attention when defense counsel cross-examined an investigator as to whether he had taken cards bearing the names of friends and associates from defendant's pockets. Defense counsel recited the names of seven individuals whose names appeared on some of the cards. On redirect, the prosecution established that the investigator had xeroxed these and other cards found in appellant's pockets and sought to introduce the xerox copies into evidence over defense counsel's objection. The district court overruled the objection.
 
 
 19
 Defense counsel deliberately elicited testimony as to the contents of defendant's pockets; he cannot be heard to complain when the prosecution requested that the supporting documents be admitted into evidence. In all events, the admission of the card would constitute harmless error. There is no allegation that the probation card was specifically referred to in the prosecution's summation or that the prosecutor suggested from this evidence that appellant had been convicted of a previous crime.
 
 V.
 
 20
 Finally, appellant contends that the evidence was insufficient to sustain his conviction. He argues that the most that could be shown was that the defendants were traveling together, that between the two of them they had checked luggage some of which contained contraband and that Walden had claim checks to all of the luggage. Appellant concludes that "to infer possession by [Pollard] is no more than speculation."
 
 
 21
 Appellant's argument is without merit. The evidence showed that appellant and Walden were traveling together and that luggage with numbers matching the stubs affixed to their common ticket folder contained cocaine. In addition, luggage from appellant's flight, which bore the same name as appellant's airline ticket, was found to contain cocaine. Both defendants fled instead of continuing their airline flight after the agents informed them that their luggage was to be searched. Despite appellant's earlier statement that he was traveling to attend his mother's funeral, he changed his clothes and left the airport. Finally, when appellant was arrested he initially denied that he had been at the airport or that he knew Walden. Such false exculpatory statements are additional circumstantial evidence of guilt. United States v. Durrani, 835 F.2d 410, 424 (2d Cir.1987).
 
 
 22
 The existence of a conspiratorial agreement may be proven by circumstantial evidence. Glasser v. United States, 315 U.S. 60, 80 (1942). Mere knowledge, acquiescence or approval of a crime is not sufficient to establish that a defendant is part of a conspiracy to distribute drugs. Nor is mere presence at the scene of illegal drug trafficking sufficient to prove participation in a conspiracy. United States v. Pupo, 841 F.2d 1235, 1238 (4th Cir.1988). However, we cannot say that after viewing the evidence in the light most favorable to the prosecution that no rational trier of fact could have found a conspiracy to possess and distribute cocaine beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 324 (1979). A reasonable jury could have inferred that appellant had dominion and control over the cocaine and that he was part of a joint venture that constructively possessed the cocaine with intent to distribute. United States v. Zandi, 769 F.2d 229, 234 (4th Cir.1985); United States v. Schocket, 753 F.2d 336, 340 (4th Cir.1985).
 
 
 23
 The judgment of the district court is therefore
 
 
 24
 AFFIRMED.