UNITED STATES of America,
Plaintiff–Appellee,

v.

Dolores Jane MORRISON,
Defendant–Appellant.

No. 92–5381.

United States Court of Appeals,
Fourth Circuit.

Argued March 4, 1993.

Decided April 16, 1993.

Lawrence Jay Fine, Winston–Salem, NC, argued, for defendant-appellant.

Michael Francis Joseph, Asst. U.S. Atty., Greensboro, NC, argued (Robert H. Edmunds, Jr., U.S. Atty., on brief), for plaintiff-appellee.

Before WILKINSON and HAMILTON, Circuit Judges, and HOWARD, United States District Judge for the Eastern District of North Carolina, sitting by designation.

**OPINION**

HAMILTON, Circuit Judge:

Dolores Morrison and Thurmond Rankin were both indicted for possession with intent to distribute 5.4 grams of cocaine base ("crack") in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B) (Count One) and knowingly carrying and using a firearm during and in relation to a drug trafficking

crime in violation of 18 U.S.C. §§ 924(c)(1) and (2).* Morrison and Rankin were jointly tried. With respect to Morrison, Count Two was dismissed, however, she was convicted of Count One.

Morrison appeals her conviction on the grounds that: (1) the evidence was insufficient to support her conviction, and (2) the district court improperly instructed the jury. We find that the evidence was sufficient and that there was no error in the district court's instruction. Accordingly, we affirm.

## I

Morrison and Rankin had been boyfriend and girlfriend for ten years and had been living together at a residence in Salisbury, North Carolina for about one year. Detective John Knight, an investigator working for the Rowan County Sheriff's Department testified that he observed the residence at various times in January and February 1991. At these times, Knight noted suspicious vehicle traffic going to and from the Morrison–Rankin residence. On one Friday night, he saw at least twenty vehicles go to and from the residence with an average stay of four minutes. Lieutenant Tommie Wood, also of the Rowan County Sheriff's Department, testified that he observed the Morrison–Rankin residence on five or six occasions in February and that he also noted an unusual number of vehicles going to and from the residence and stopping only for four or five minutes.

On February 28, 1991, Detective Knight went to the residence and was admitted without comment by Rankin, who had never met Knight until this time. Knight had a search warrant, but did not serve it immediately. At the time, Rankin was speaking to an unidentified male and they stepped outside, continuing their conversation. Knight was left standing in the kitchen of the residence. Morrison was seated at a kitchen table nearby. On the table within two feet of her was a black vinyl bag containing fifty-two rocks of crack, weighing 5.4 grams. The bag was zippered shut so that its contents were con-cealed. Knight then asked Morrison for a "quarter," referring to a quarter-size piece of crack. Morrison paused, shook her head and responded that "no, she couldn't do it." (J.A. 87). Knight then explained he had been sent to the house by a coworker who had told him that Morrison could fix him up. Morrison again stated that "no, she couldn't do it." (J.A. 89). Knight then asked if she could send him somewhere else so he could "take care of [his] needs." Morrison again stated that she couldn't do it. Detective Knight then heard his backup team arrest Rankin outside. At that time, Knight announced that he was a police officer and executed the search warrant.

In addition to the bag of cocaine on the kitchen table, a search of the residence revealed a loaded nine-millimeter pistol in a bedroom in a dresser drawer. It was subsequently discovered that the gun had been stolen seventeen days earlier. Also found in the dresser was a bag containing thirty-seven one dollar bills. A metal money box containing $431 was discovered under a bed and another bag containing $1,213 was located between the mattresses of the bed. Lying beside this bag was a cigarette carton which had columns of money figures added which totaled $13,790 and $11,950. A police scanner was found in the living room area and a spiral notebook containing names with dollar entries was found in the kitchen area. During the execution of the search warrant, ten vehicles came down the driveway of the residence and as many as five or six others turned around and did not enter.

At trial, Lieutenant Wood testified that he was familiar with how crack was consumed and distributed in Rowan County and that, based on his experience as a narcotics officer, 5.4 grams was inconsistent with personal use and was a distribution quantity.

Morrison was tried on February 24 and 25, 1992. Following the government's presentation of evidence, Morrison moved for a judgment of acquittal on the ground that

---

* Rankin was charged with additional counts not relevant to this appeal.

the government produced insufficient evidence to convict her of either count of the indictment against her. The district court granted the motion as to Count Two—knowingly carrying and using a firearm during and in relation to a drug trafficking crime—but denied the motion as to Count One. Subsequently, the jury found Morrison guilty of Count One. The district court sentenced her to a term of imprisonment of seventy-five months. This appeal followed.

## II

Morrison claims that the government's evidence was insufficient to establish that she possessed the crack which was found on the table. When a jury verdict is challenged based on the sufficiency of the evidence it must be upheld if there is substantial evidence, viewed in the light most favorable to the government, to support the finding of guilt. *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942).

Morrison argues that she was merely present on the premises where drugs were found and, therefore, she could not be deemed to be in possession of the cocaine. *See United States v. Samad*, 754 F.2d 1091, 1096 (4th Cir.1984) ("mere presence on the premises where drugs are found or the mere association with one who possesses drugs is insufficient to establish the possession needed for a conviction....").

Possession may be actual or constructive. "Constructive possession exists when the defendant exercises, or has the power to exercise, dominion or control over the item." *United States v. Zandi*, 769 F.2d 229, 234 (4th Cir.1985); *United States v. Schocket*, 753 F.2d 336, 340 (4th Cir. 1985). Circumstantial evidence can be sufficient to establish constructive possession. *United States v. Laughman*, 618 F.2d 1067, 1077 (4th Cir.), *cert. denied*, 447 U.S. 925, 100 S.Ct. 3018, 65 L.Ed.2d 1117 (1980).

When Knight entered the house neither Rankin nor Morrison had met him previously and yet he was admitted without questioning. When Knight attempted to purchase a "quarter," Morrison did not ask what a "quarter" was or what Morrison was doing in her house. She just said that she could not do it. Morrison concedes that the bag of drugs was within her reach. The number of vehicles seen going to and from the house, together with the short amount of time they remained at the house is consistent with the operation of a retail cocaine distribution site. Also, the items in the house strongly support the conclusion that the residence was used to distribute cocaine. The quantity of cocaine itself was sufficient to infer that distribution was intended. *United States v. Roberts*, 881 F.2d 95, 99 (4th Cir.1989) (quantity too large for personal consumption may be inferred to be for distribution). The police scanner and the firearm, together with the cash secreted throughout the house, strongly support the conclusion that drugs were being distributed from Morrison's residence.

The evidence that Morrison possessed the cocaine with intent to distribute goes far beyond those cases where dismissal was appropriate. For instance, in *United States v. Blue*, 957 F.2d 106 (4th Cir.1992), police officers noticed two men leave a residence and drive away in a car. The officers noticed that the men were not wearing seat belts and, ostensibly because of this traffic violation, pulled the car over. As the officers approached the car, one officer noticed an occupant of the vehicle dip his shoulder as if to reach under the car seat. A revolver was later discovered under the seat. Both occupants denied knowledge of the gun's presence. A jury found Blue guilty of being a felon in possession of a firearm. We reversed, holding that the mere dip of a shoulder was insufficient to constitute constructive possession. Morrison, however, was not a mere passenger in a car as was Blue. She and Rankin had been boyfriend and girlfriend for ten years and were living at the residence for over a year. The circumstantial evidence was overwhelming indicating that there was a large ongoing retail drug trade being conducted from the residence since at least January. The circumstances are thus easily distinguishable from such a case as *United States v. Samad*, 754 F.2d 1091

(4th Cir.1984) (one person's mere receipt of package of drugs addressed to his roommate was insufficient to support constructive possession); *United States v. Delgado*, 327 F.2d 641 (9th Cir.1964) (a small quantity of drugs found in nightstand of bedroom shared by two defendants is insufficient, in and of itself, to support element of possession); and *Goldsmith v. Witkowski*, 981 F.2d 697 (4th Cir.1992). In *Goldsmith*, the defendant was arrested with drugs close by him and in plain sight. Unlike this case, however, Goldsmith did not reside, or even frequent, the premises; he had no apparent relationship to the tenant; he did not act suspiciously upon the police's entry; and there was no showing that he was alone with the drugs when the police entered.

■ Although mere joint tenancy of a residence is insufficient to prescribe possession to all the occupants, the addition of other facts akin to those present in this case, is sufficient to sustain a finding of possession. *See, e.g., United States v. Gatewood*, 786 F.2d 821 (8th Cir.1986) (knowledge of drug paraphernalia, together with defendant's obstruction of search of premises sufficient to support determination that drugs hidden in a drawer were constructively possessed by defendant who did not own the premises but was present there); *United States v. Lawson*, 682 F.2d 1012, 1017 (D.C.Cir.1982) (joint possession of the premises for seven years where drugs are openly strewn about is sufficient to find possession); *United States v. Staten*, 581 F.2d 878 (D.C.Cir.1978) (presence and close proximity to area where drugs were prepared, together with association with a regular occupant of the premises and attempt to dispose of drugs were sufficient to support the conclusion that the drugs were under "dominion and control" of occupants); *United States v. Davis*, 562 F.2d 681, 685 (D.C.Cir.1977) (holding that the defendant who lived on the premises had constructive possession of drugs openly displayed).

Taken as a whole, the evidence clearly supports the jury's conclusion that Morri-

son had constructive possession of the crack. In view of these facts, the district court did not err by denying Morrison's motion for acquittal on the charge of possession with intent to distribute cocaine.

### III

■ Morrison argues that the district court impermissibly shifted the burden to prove intent to distribute to her when it charged the jury: "Basically, you are determining whether the substances in the defendant's possession were for his or her personal use or for the purpose of possession." (J.A. 256–57). Morrison's argument is that this instruction gave the jury only two choices: (1) possession with intent to distribute, or (2) possession for personal use. Since the quantity was inconsistent with personal use, Morrison argues, the jury was required by the instruction to find possession with intent to distribute.

On the issue of intent to distribute, the district court clearly charged that the government had to prove beyond a reasonable doubt that: (1) the defendant knowingly and willfully possessed a controlled substance, and (2) that he or she possessed it with intent to distribute. The district court went on to explain the government's burden on "intent to distribute" as follows:

To prove that, the Government must prove, beyond a reasonable doubt, that the defendant had control over the substance, with a state of mind, or purpose, to transfer it to another person.... Since you cannot read the defendant's mind, you may make the inferences from his or her behavior. However, you may not convict a defendant unless these inferences convince you, beyond a reasonable doubt, that the defendant intended to distribute the substance.

When I say that you must find the defendant intended to distribute the substance, in order to find him or her guilty on this count, this does not mean that you must find that the defendant intended personally to deliver or distribute the sub-

stance. It is sufficient if you find that the defendant intended to cause, or assisted in, the distribution of the substance. Basically you are determining whether the substances in the defendant's possession were for his or her personal use or for the purposes of distribution. Often it is possible to make this determination by the quantity of the substance found in the defendant's possession.

(J.A. 256–57). Morrison objected to the charge.

Whether jury instructions were properly given is a question of law; however, the instruction must be read as a whole. If it fairly summarizes the law, it is not grounds for reversal. *Henderson v. Kibbe*, 431 U.S. 145, 97 S.Ct. 1730, 52 L.Ed.2d 203 (1977); *United States v. Park*, 421 U.S. 658, 95 S.Ct. 1903, 44 L.Ed.2d 489 (1975); *United States v. Fowler*, 932 F.2d 306, 317 (4th Cir.1991). Parts of the jury instruction may not be viewed in isolation. *United States v. Varner*, 748 F.2d 925 (4th Cir.1984). The instruction, as a whole, very clearly charges the jury that the government must prove possession and intent to distribute, and that intent to distribute could not be assumed.

### IV

We find no cause for reversal in Morrison's assignments of error. Accordingly, the district court's judgment is affirmed.

AFFIRMED.