16 F.3d 412
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Joshua BEST, Defendant-Appellant.
 No. 93-5043.
 United States Court of Appeals, Fourth Circuit.
 Argued Dec. 10, 1993.
Decided Jan. 6, 1994.
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Albert V. Bryan, Jr., Senior District Judge. (CR-92-433-A)
 Justin Michael Miller, Jacobovitz, English & Smith, Alexandria, for appellant.
 Daniel Case Stark, Sp. Asst. U.S. Atty., Alexandria, for appellee.
 On Brief: Kenneth E. Melson, U.S. Atty., Alexandria, for appellee.
 E.D.Va.
 REVERSED.
 Before PHILLIPS and HAMILTON, Circuit Judges, and NORTON, United States District Judge for the District of South Carolina, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 Defendant-appellant, Joshua Best, appeals his conviction for possession of cocaine base (crack), 36 C.F.R. Sec. 2.35(b)(2). Finding that a rational trier of fact could not have found Best guilty beyond a reasonable doubt, we reverse.
 
 
 2
 * On May 12, 1992, United States Park Police Officer Francis Barwinczak stopped a car, in which Best was riding in the passenger seat, on the George Washington Memorial Parkway for expired license tags.[1] As Barwinczak approached the driver's side of the car, he observed open and closed containers of beer inside the car. Barwinczak asked the driver for his driver's license. When the driver failed to produce a valid license, he was arrested and ordered to sit in Barwinczak's police car.
 
 
 3
 Barwinczak then asked Best to exit the car. After Barwinczak asked Best to exit the car, Best exited the car and closed the door as Barwinczak "was walking towards him." (J.A. 31). Barwinczak testified that Best was not "nervous" or "emotional," but rather appeared "stone cold." Id. When Barwinczak opened the passenger door, he discovered two clear baggies, an inch-by-inch in size, containing crack[2] on the floor between the passenger door and the passenger seat.[3] Best was arrested and charged in a criminal complaint with possession of crack, 36 C.F.R. Sec. 2.35(b)(2).[4]
 
 
 4
 After a bench trial before a United States Magistrate Judge, Best was convicted. He appealed his conviction to the district court which affirmed his conviction. Best noted a timely appeal to this court.
 
 II
 
 5
 The issue presented in this appeal is whether there was sufficient evidence to support Best's conviction. To resolve this issue we must decide "whether, viewing the evidence in a light most favorable to the government, any rational trier of facts could have found [Best] guilty beyond a reasonable doubt." United States v. Tresvant, 677 F.2d 1018, 1021 (4th Cir.1982).
 
 
 6
 Possession of an object or objects may exist in two forms: actual or constructive. United States v. Zandi, 769 F.2d 229, 234 (4th Cir.1985). The government may prove actual or constructive possession by circumstantial, as well as direct, evidence. United States v. Laughman, 618 F.2d 1067, 1077 (4th Cir.), cert. denied, 447 U.S. 925 (1980). "Constructive possession exists when the defendant exercises, or has the power to exercise, dominion and control over the item." Zandi, 769 F.2d at 234. However, an individual's presence in a car does not establish possession. United States v. Blue, 957 F.2d 106, 108 (4th Cir.1992). Rather, an individual's proximity to an object in a vehicle, " 'goes only to [the object's] accessibility, not to the dominion or control which must be proved to establish possession.' " Id. (quoting United States v. Soto, 779 F.2d 558, 560 (9th Cir.1986) (further citations omitted)). Finally, "knowledge of the presence of the controlled substance is essential to an assertion of constructive possession." United States v. Bell, 954 F.2d 232, 235 (4th Cir.), cert. denied, 61 U.S.L.W. 3260 (1992).
 
 
 7
 Relevant to the knowledge inquiry is the totality of the circumstances of the arrest and the alleged possession. Id. For example, in Bell, Jorge Bell was driving a car, registered to Leocadio Reyes, with two passengers, Lorenzo Cruz and Jose Fernandez, when it was stopped by the police. During a search of the car, the police discovered a hidden compartment which contained crack. Before this court, Bell and Cruz alleged, among other things, that there was insufficient evidence that they knowingly possessed the crack. As to Bell, we disagreed, holding that Bell's "extensive[ ] familiar[ity]" with the car was sufficient to support his conviction. Id. at 236. As to Cruz, we held:
 
 
 8
 Cruz' presence in the car, his brief attempt to leave the scene at the time the car was stopped, his apparent relationship with Bell on other occasions, and his "nervous" response to the search, are sufficient, though barely so, to allow for an inference by the jury free of "reasonable" doubt.
 
 
 9
 Id. Also relevant to the knowledge inquiry is the location of the object, acts performed in an attempt to conceal the object, and whether the government produced "fingerprints or other physical evidence which would link" the object to the accused. Blue, 957 F.2d at 108. In addition, evidence of knowledge of a conspiracy, ongoing drug distribution, or the drug trade is relevant to the issue of knowledge. United States v. Morrison, 991 F.2d 112, 114 (4th Cir.1993). Along this vein, evidence admitted under Fed.R.Evid. 404(b) is certainly relevant to the issue of intent.
 
 
 10
 In the present case, the government relies on the following to suggest the requisite knowledge of Best: (1) the location of the baggies and (2) Best's closing of the passenger door as Barwinczak approached him. We believe that this evidence, standing alone, is insufficient to suggest knowledge and thereby support a finding of constructive possession.
 
 
 11
 In Blue, police officers observed two men leave a residence and drive away in a car. The car was eventually stopped. As the officers approached the vehicle, one officer noticed Blue, who was seated in the front passenger seat, dip his shoulder as if to reach under the passenger seat. Upon searching the vehicle, a revolver was recovered under the passenger seat. We reversed Blue's conviction for possession of a firearm by a convicted felon holding "Blue's shoulder dip alone [did] not transform [him] from a mere passenger in the car to a possessor of whatever is discovered underneath the seat in which he is sitting." Blue, 957 F.2d at 108.
 
 
 12
 Following Blue, we believe that the two clear baggies, an inch-by-inch in size, containing a combined weight of one-tenth of a gram of crack, located on the floor of the car between the passenger seat and the passenger door and Best's closing of the door as Barwinczak approached him did "not transform [him] from a mere passenger in the car to a possessor of whatever" was discovered between the passenger door and the passenger seat. Id. This conclusion derives particular force because noticeably absent from the government's case, as in Blue, was fingerprint evidence or other evidence linking Best to the crack. In addition, there was no evidence of flight or nervousness, or evidence linking Best to the car, relied upon by the Bell court. Moreover, there was no evidence of ongoing drug distribution or knowledge of the drug trade, relevant in Morrison, or Fed.R.Evid. 404(b) evidence admitted on the issue of intent. There is simply no evidence that Best knew there was crack between the passenger seat and the passenger door. In sum, we believe that, viewing the evidence in a light most favorable to the government, no "rational trier of facts could have found [Best] guilty beyond a reasonable doubt." Tresvant, 677 F.2d at 1021. Accordingly, Best's conviction for possession of crack, 36 C.F.R. Sec. 2.35(b)(2), is reversed.
 
 
 
 [1]
 The car was stopped in an area within the special maritime and territorial jurisdiction of the United States that is administered by the National Park Service in the Eastern District of Virginia
 
 
 [2]
 The combined weight of the crack contained in the two baggies was approximately one-tenth of a gram
 
 
 [3]
 Barwinczak explained the location of the drugs as follows: [T]hey were between the door and the seat. They were not located under the seat. They were on this little strip of carpet that's inside the vehicle between the, the edge of the--it would be the--it would be the--passenger side of the seat and the passenger door
 (J.A. 30).
 
 
 [4]
 The driver of the car was not charged with possession of the crack