**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

No. 95-5472

DARRYL GREENWOOD, a/k/a Darryl
Robert Greenwood, a/k/a Dee,
Defendant-Appellant.

Appeal from the United States District Court
for the Middle District of North Carolina, at Greensboro.
Frank W. Bullock, Jr., Chief District Judge.
(CR-94-258)

Argued: June 7, 1996

Decided: July 10, 1996

Before WILKINSON, Chief Judge, and HAMILTON and LUTTIG,
Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Ernest Raymond Alexander, Jr., ALEXANDER, PFAFF
& ELMORE, Greensboro, North Carolina, for Appellant. Robert
Michael Hamilton, OFFICE OF THE UNITED STATES ATTOR-
NEY, Greensboro, North Carolina, for Appellee. **ON BRIEF:** Walter
C. Holton, Jr., United States Attorney, David B. Smith, Assistant
United States Attorney/Senior Litigation Counsel, Timika Shafeek,

Assistant United States Attorney, Greensboro, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

In this appeal, the appellant, Darryl Greenwood, challenges his convictions for: (1) conspiracy to possess with intent to distribute and to distribute cocaine base (crack), see 21 U.S.C. §§ 841(a)(1) and 846; (2) possession of crack with intent to distribute, see 21 U.S.C. § 841(a)(1); and (3) using a firearm during and in relation to a drug trafficking crime, see 18 U.S.C. § 924(c)(1). Greenwood also challenges his sentence. For the reasons that follow, we affirm.

I

This case involves a garden-variety drug conspiracy. Through the use of drug couriers, Greenwood arranged for the delivery of crack from New York to Greensboro, North Carolina. From August 1994 until November 8, 1994, Eric and Larry Carter received weekly quantities of crack from Greenwood for distribution in Greensboro. Generally, Greenwood would front crack to Eric Carter, who would in turn give one-half of the crack to Larry Carter. The Carters would then sell the crack, and Eric Carter would pay Greenwood for the fronted crack. However, on several occasions, Larry Carter purchased crack directly from Greenwood.

On November 8, 1994, Larry Carter was arrested at April McClurkin's apartment. During a consensual search of McClurkin's apartment, the police recovered over 400 grams of crack and other evidence of drug trafficking. At trial, the government established that this crack was supplied by Greenwood.

2

During the course of the conspiracy, Eric Carter delivered $35,000 in drug proceeds to Greenwood. Greenwood was subsequently robbed of these drug proceeds, and Greenwood suspected that Patrick Hollingsworth had set him up to be robbed. Following the robbery, Greenwood was observed pointing a firearm at Hollingsworth in an effort to collect the money Greenwood suspected Hollingsworth had stolen. At gun point, Hollingsworth turned over between $2,000 and $2,500 to Greenwood.

On December 19, 1994, Greenwood and the Carters were charged in a superseding indictment with conspiracy to possess with intent to distribute and to distribute crack, see 21 U.S.C. §§ 841(a)(1) and 846. On the basis of the crack recovered at McClurkin's apartment, Greenwood and the Carters were also charged with possession of crack with intent to distribute, see 21 U.S.C. § 841(a)(1). Finally, as a result of Greenwood's use of the firearm during and in relation to the conspiracy, Greenwood was charged with using a firearm during and in relation to a drug trafficking crime, see 18 U.S.C. § 924(c)(1).

The Carters entered into plea agreements with the government and testified at Greenwood's jury trial. The jury convicted Greenwood of all three counts contained in the superseding indictment. The district court sentenced Greenwood to 252 months' imprisonment on the conspiracy and possession counts and to a consecutive sixty months' imprisonment on the firearm count. Greenwood noted a timely appeal.

II

On appeal, Greenwood raises numerous assignments of error, only a few of which merit discussion.

A

Greenwood challenges the sufficiency of the evidence to support his conspiracy conviction. This argument has no merit.

It is well settled that in order to prove a conspiracy, the government must prove: "(1) an agreement between two or more persons (not

3

including government agents), (2) to commit in concert an unlawful act." United States v. Giunta, 925 F.2d 758, 764 (4th Cir. 1991). In assessing whether the government has established the necessary agreement, we look to the totality of the circumstances. United States v. Bell, 954 F.2d 232, 236 (4th Cir. 1992), cert. denied, 114 S. Ct. 112 (1993). The government need not show that the defendant knew all the conspirators, had knowledge of all the details of the conspiracy, or that he had a major role in the conspiracy. United States v. Brooks, 957 F.2d 1138, 1147 (4th Cir.), cert. denied, 112 S. Ct. 3051 (1992). In a drug conspiracy, the government is not required to prove the commission of an overt act in furtherance of the conspiracy. United States v. Mabry, 953 F.2d 127, 130 (4th Cir. 1991), cert. denied, 112 S. Ct. 1951 (1992). Because conspiracies are intrinsically secretive, the government may prove its case by circumstantial, as well as direct, evidence. Giunta, 925 F.2d at 764; United States v. Brown, 856 F.2d 710, 711-12 (4th Cir. 1988). "More than mere association with bad people who are committing crimes is required for a conspiracy conviction." Bell, 954 F.2d at 237. Once the government establishes the existence of a conspiracy, "the evidence need only establish a slight connection between the defendant and the conspiracy to support conviction." Brooks, 957 F.2d at 1147.

In this case, the evidence showed that a conspiracy existed, that Greenwood knew of it, and that he voluntarily became part of it. The government's evidence established that Greenwood fronted crack to the Carters, the Carters then sold the crack, and Eric Carter paid Greenwood for the fronted crack. This evidence was more than sufficient to support Greenwood's conspiracy conviction.

B

Greenwood also challenges the sufficiency of the evidence to support his conviction for possession of crack with intent to distribute. The government responds to Greenwood's argument by asserting that the conviction should be sustained under the Pinkerton doctrine. See Pinkerton v. United States, 328 U.S. 640 (1946). Under the Pinkerton doctrine, Greenwood is liable for actions of his coconspirators that are in furtherance of the conspiracy and reasonably foreseeable. Id. at 647-48.

4

To sustain Greenwood's conviction, the government had to show that he knowingly and intentionally possessed the crack with the intent to distribute it. United States v. Nelson , 6 F.3d 1049, 1053 (4th Cir. 1993), cert. denied, 114 S. Ct. 2142 (1994). "Possession may be actual or constructive." United States v. Morrison, 991 F.2d 112, 114 (4th Cir.), cert. denied, 114 S. Ct. 225 (1993). "Constructive possession exists when the defendant exercises, or has power to exercise, dominion or control over the item." United States v. Zandi, 769 F.2d 229, 234 (4th Cir. 1985). "To establish constructive possession, the government must produce evidence showing ownership, dominion, or control over the contraband itself or the premises or vehicle in which the contraband is concealed." United States v. Blue, 957 F.2d 106, 109 (4th Cir. 1992).

For purposes of determining the sufficiency of evidence for conspiratorial liability under Pinkerton, the government must establish: (1) the substantive offense was committed pursuant to the conspiracy; (2) the defendant was a member of the conspiracy at the time the substantive offense was committed; and (3) the commission of the substantive offense was reasonably foreseeable in furtherance of the conspiracy. Pinkerton, 328 U.S. at 646-48; see also United States v. Irvin, 2 F.3d 72, 75 (4th Cir. 1993), cert. denied, 114 S. Ct. 1086 (1994). All conspirators are liable for reasonably foreseeable crimes committed by any member of the conspiracy in furtherance thereof. Pinkerton, 328 U.S. at 646-48; United States v. McManus, 23 F.3d 878, 883 (4th Cir. 1994).

The evidence, viewed in the light most favorable to the government, see Glasser v. United States, 315 U.S. 60, 80 (1942), supports Greenwood's conviction for possession of crack with intent to distribute. Greenwood's conviction arose out of the November 8, 1994 arrest of Larry Carter at McClurkin's apartment in which the police seized over 400 grams of crack. The evidence showed that: (1) Larry Carter possessed and/or constructively possessed the crack seized at McClurkin's apartment; (2) Greenwood supplied the crack seized; (3) at the time of the seizure, Greenwood was still arranging for the delivery of crack to Greensboro for distribution pursuant to the overall conspiracy alleged in the conspiracy count; (4) Greenwood and the Carters were members of the conspiracy at this time; and (5) the commission of this offense was reasonably foreseeable to Greenwood,

5

who had arranged for delivery of the crack and who had participated in drug transactions with the Carters. In short, this evidence was more than sufficient to support Greenwood's conviction.

C

Greenwood also challenges the sufficiency of the evidence of his conviction for using a firearm during and in relation to a drug trafficking offense, see 18 U.S.C. § 924(c)(1).

In Bailey v. United States, the Supreme Court held that the word "use" as contained in § 924(c) "denotes active employment." 116 S. Ct. 501, 509 (1995). Examples of "use" cited by the Court include "brandishing, displaying, bartering, striking with, and most obviously, firing or attempting to fire, a firearm." Id. at 508. An example falling outside the definition of "use" cited by the Court is storage of a firearm. Id.

The government's evidence at trial established that Greenwood asked Eric Carter to deliver the Tech-9 firearm to him after he was robbed of $35,000 in drug proceeds. Thereafter, Eric Carter saw Greenwood pointing the Tech-9 at Patrick Hollingsworth, whom Greenwood believed set him up to be robbed. After Hollingsworth had the gun pointed at him, he gave Greenwood $2,000-$2,500.

Under Bailey, Greenwood's pointing of the gun at Hollingsworth in an effort to collect the $35,000 in drug proceeds Greenwood suspected Hollingsworth had participated in stealing clearly constituted use of a firearm during and in relation to the drug conspiracy. The Tech-9 firearm was used while the conspiracy was ongoing, and Greenwood was clearly using the firearm in an attempt to collect stolen drug proceeds and to defend against future acts of violence against the drug operation. Cf. United States v. Cook, 76 F.3d 596, 603 (4th Cir. 1996) (noting that pointing a gun at a purchaser during a drug transaction constitutes "use" of a firearm under Bailey). Accordingly, Greenwood's attack on his § 924(c)(1) conviction has no merit.

D

Greenwood also argues that because crack describes no other substance than cocaine and since it is impossible to differentiate between

6

the substances, the district court should have applied the rule of lenity to compensate for the ambiguity. Greenwood relies heavily on United States v. Davis, 864 F. Supp. 1303 (N.D. Ga. 1994), in support of his contention. We have, however, explicitly rejected the reasoning of Davis and held that a purposeful distinction was made in 21 U.S.C. § 841 between cocaine and crack, making the statute unambiguous and the rule of lenity inapplicable. See United States v. Fisher, 58 F.3d 96, 98-99 (4th Cir.), cert. denied, 116 S. Ct. 329 (1995). Therefore, we hold that the district court correctly applied the stricter penalties for crack offenses to Greenwood's case.

III

Greenwood also challenges the propriety of his arrest. We have reviewed this assignment of error and find it without merit. Accordingly, for the reasons stated herein, the judgment of the district court is affirmed.

AFFIRMED

7