**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 04-4536

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

NICHOLAS SHAMAR GRIFFIN,

Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of North Carolina, at Wilmington. James C. Fox, Senior District Judge. (CR-03-103)

Argued: March 15, 2006          Decided: April 12, 2006

Before LUTTIG and SHEDD, Circuit Judges, and HAMILTON, Senior Circuit Judge.

Affirmed in part, vacated in part, and remanded by unpublished per curiam opinion.

**ARGUED:** Geoffrey Wuensch Hosford, HOSFORD & HOSFORD, P.C., Wilmington, North Carolina, for Appellant. Jennifer P. May-Parker, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee. **ON BRIEF:** Frank D. Whitney, United States Attorney, Anne M. Hayes, Assistant United States Attorney, Christine Witcover Dean, Assistant United States Attorney, Raleigh, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

PER CURIAM:

A jury convicted Nicholas Shamar Griffin of possession with intent to distribute more than 5 grams of cocaine base (commonly known as "crack cocaine"), possession of firearms in furtherance of a drug trafficking crime, and possession of firearms by a convicted felon, and the district court sentenced him to a 246 month-term of imprisonment.[1]  On appeal, Griffin challenges his convictions and his sentence.  For the reasons set forth below, we affirm Griffin's convictions, but we vacate his sentence and remand for resentencing.

I

Griffin first argues that the evidence is insufficient to establish that he possessed the crack cocaine and firearms for which he was charged.  We disagree.

A.

Griffin's possession of the crack cocaine is an essential element of the § 841(a) charge, and his possession of the firearms is an essential element of the §§ 922(g)(1) and 924(c) charges.  To

---

[1]These offenses were brought pursuant to 21 U.S.C. § 841(a)(1), 18 U.S.C. § 924(c), and 18 U.S.C. § 922(g)(1), respectively.  The district court sentenced Griffin to 186 months of imprisonment on the § 841(a)(1) count, a concurrent 120-month term on the § 922(g)(1) count, and a consecutive 60-month term on the § 924(c) count.

meet its burden of proof as to possession, the government relied on the theory of constructive possession, which holds that the evidence establishes "such a nexus or relationship between the defendant and the [contraband] that it is reasonable to treat the extent of the defendant's dominion and control as if it were actual possession." United States v. Smith, 407 F.2d 35, 37 (4th Cir. 1969) (citation and internal quotation marks omitted).[2]

In order to establish constructive possession of contraband, the government must prove that the defendant "knows of its presence and has the power to exercise dominion and control over it." United States v. Schocket, 753 F.3d 336, 340 (4th Cir. 1985). Constructive possession "does not have to be exclusive, but can be shared with others," United States v. Wright, 991 F.2d 1182, 1187 (4th Cir. 1993), and "[a] defendant may have constructive possession of contraband even if it is not in his immediate possession or control," United States v. Shorter, 328 F.3d 167, 172 (4th Cir. 2003). The government can prove constructive possession by using either direct or circumstantial evidence. United States v. Burgos, 94 F.3d 849, 873 (4th Cir. 1996) (en banc).

---

[2]Neither the district court's jury instructions nor the parties' closing arguments are included in the appellate record. However, the government does not argue on appeal that it established that Griffin had actual possession of the firearms and crack cocaine. We therefore limit our consideration to constructive possession.

3

Although a defendant's mere presence at, or joint tenancy of, a location where contraband is found, or his mere association with another contraband possessor, is insufficient to establish constructive possession, United States v. Morrison, 991 F.2d 112, 115 (4th Cir. 1993); United States v. Rusher, 966 F.2d 868, 878 (4th Cir. 1992); "where other circumstantial evidence . . . is sufficiently probative, proximity to contraband coupled with inferred knowledge of its presence" will support such a finding. United States v. Laughman, 618 F.2d 1067, 1077 (4th Cir. 1980) (citation and internal quotation marks omitted). Consistent with this principle, we have held that the fact that contraband is found in a defendant's residence "permits an inference of constructive possession" and that this inference is "bolstered" by evidence that the contraband is in plain view or that material associated with the contraband is also in the residence. Shorter, 328 F.3d at 172. However, constructive possession does not require proof that the defendant actually owned the property on which the contraband was found. See, e.g., United States v. Poore, 594 F.2d 39, 43 (4th Cir. 1979) (affirming constructive possession finding where the defendant resided in another person's apartment).

B.

We must sustain the verdict "if there is substantial evidence, viewed in the light most favorable to the Government, to uphold the

4

jury's decision." Burks v. United States, 437 U.S. 1, 17 (1978). Substantial evidence is that evidence which a "reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." Burgos, 94 F.3d at 862. Viewed in the light most favorable to the government, the evidence establishes the following.

Before August 6, 2002, Brunswick County, North Carolina, Sheriff's Deputy Clint Simpson saw Griffin numerous times while Simpson conducted surveillance or undercover operations in the Longwood community in Brunswick County. Griffin's girlfriend lived in a trailer in Longwood, Griffin stayed at the trailer frequently, and a vehicle registered to and driven by Griffin was "always at the house." J.A. 21. Deputy Simpson saw Griffin come and go from the trailer several times. On numerous occasions, Deputy Simpson saw Griffin standing among a group of people in front of the trailer. Deputy Simpson also saw Griffin engage in brief encounters with drivers in the same area. If a vehicle slowed down near the group Griffin was with, Griffin would approach the vehicle, lean into it, talk to the driver, and stick his hand in the window. These interactions lasted 30 seconds or less. Other persons engaged in the same types of encounters in Griffin's presence.

In March 2002, Brunswick County Sheriff's Office Narcotics Agent Israel West arranged for an informant to make a controlled

drug purchase. A video camera captured a brief meeting between the informant and Griffin, within 100 yards of the trailer. Immediately after this meeting, the informant returned to Agent West and gave him a small piece of a substance which had an appearance that was consistent with crack cocaine.

In the early morning of August 6, law enforcement officers went to the trailer where Griffin's girlfriend lived to execute an arrest warrant for Griffin. An occupant of the trailer permitted the officers to enter and told them Griffin was in one of the bedrooms. The officers found Griffin and a woman inside the locked bedroom. Griffin was wearing a pair of boxer shorts when the officers first encountered him, and they asked him to put on his pants. The officers then searched Griffin and seized marijuana from his pants pockets. The officers also seized a pill bottle that lay on the floor near Griffin's foot; the bottle contained a substance that appeared to be crack cocaine. The officers took Griffin into custody.

That afternoon, law enforcement officers searched the trailer pursuant to a search warrant. The search of the bedroom where Griffin was arrested yielded drugs and drug paraphernalia, firearms and ammunition, and indicia of Griffin's residence in the trailer.

Specifically, the officers found 2.8 grams of crack cocaine in a small box sitting atop a television[3] and 11.3 grams of crack cocaine inside one of two locked safes found in the room. The safe containing the crack cocaine also contained an envelope on which Griffin's name was handwritten. The envelope contained a letter dated August 5, 2002, which verified that Griffin was employed by a construction company as a sub-contractor and had been paid; and a pay stub, dated August 2, 2002, that bore Griffin's name.

The officers also found a shotgun in the bedroom closet, a loaded semi-automatic pistol in a cigar box near the bed, a loaded revolver on the floor near the bed and adjacent to one of the safes, and a rifle (a loaded magazine designed to fit this rifle was found on a chest of drawers adjacent to the bed). Additionally, the officers found marijuana, postal scales, small plastic bags, loose bullets, currency, and several items of men's clothing in the bedroom.

## C.

We conclude that this evidence is more than sufficient to establish Griffin's constructive possession of the crack cocaine and firearms. From this evidence, the jury was permitted to find that Griffin was a crack cocaine dealer who operated near, and

---

[3]At trial, the parties stipulated that the weight of this crack cocaine was two grams.

resided in, his girlfriend's trailer.  In addition, the jury could find specifically that Griffin had knowledge of, and dominion and control over, the crack cocaine and firearms because of his early morning presence in the bedroom where those items were found, the fact that a large quantity of crack cocaine was found with his personal papers in the locked safe that was in the bedroom, and the fact that the firearms and ammunition were found throughout the bedroom in readily accessible places within a relatively short time after Griffin was arrested.  See generally United States v. Gallimore, 247 F.3d 134, 137 (4th Cir. 2001) (upholding finding of constructive possession of firearms based on evidence that some of the firearms were found in a safe that also contained the defendant's personal papers, the firearms were discovered within 24 hours after the defendant had left the house, and the firearms were disbursed in a manner that indicated they had been in the house for more than 24 hours); United States v. Jones, 204 F.3d 541, 543-44 (4th Cir. 2000) ("Given that the cocaine . . . was found behind a dresser drawer in the bedroom from which the officer saw Jones exit and in which authorities discovered Jones' personal papers, we cannot say that the district court, sitting as trier of fact, erred in finding that Jones possessed the cocaine.").  Accordingly, we affirm Griffin's convictions.[4]

_____

[4]We have considered Griffin's other arguments concerning his convictions and find them to be without merit.

II

Griffin also argues that his sentence is unconstitutional under <u>United States v. Booker</u>, 543 U.S. 220 (2005). The government concedes that Griffin must be resentenced under <u>Booker</u>, noting that the district court plainly erred by relying at sentencing on a greater drug quantity than that alleged in the indictment and found by the jury. <u>See</u> <u>United States v. Hughes</u>, 401 F.3d 540 (4th Cir. 2005). We agree that Griffin's sentence runs afoul of <u>Booker</u> and <u>Hughes</u>.[5] Therefore, we vacate Griffin's sentence and remand for resentencing in accordance with those cases.[6]

III

Based on the foregoing, we affirm Griffin's convictions, vacate his sentence, and remand for resentencing.

<u>AFFIRMED IN PART,</u>
<u>VACATED IN PART,</u>
<u>AND REMANDED</u>

---

[5]Just as we noted in <u>Hughes</u>, we "offer no criticism of the district judge, who followed the law and procedure in effect at the time" of Griffin's sentencing. 401 F.3d at 545 n.4.

[6]Because we are remanding this case for resentencing, we decline to address Griffin's argument that the district court erred in calculating his sentencing guideline range. <u>See</u> <u>Hughes</u>, 401 F.3d at 556 n.15 ("we do not hold that in every case involving a <u>Booker</u> issue, this court must first address alleged calculation errors before vacating and remanding for resentencing").

9